UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL DEBOER, individually and as parent
and next friend of N.D.-R, R.D.-R., and J.D.-R,
minors, and JAYNE ROWSE, individually and
as parent and next friend of N.D.-R, R.D.-R.,
and J.D.-R, minors,

       Plaintiffs,

v

RICHARD SNYDER, in his official capacity as
Governor of the State of Michigan,

and

BILL SCHUETTE, in his official capacity as
Michigan Attorney General,

       Defendants.

No. 2:12-cv-10285-BAF-MJH

HON. BERNARD A. FRIEDMAN

MAG. MICHAEL J.
HLUCHANIUK

_____

Dana M. Nessel (P51346)
Attorney for Plaintiffs
645 Griswold Street, Suite 3060
Detroit, MI 48226
(313) 556-2300
dananessel@hotmail.com

Carole M. Stanyar (P34830)
Attorney for Plaintiffs
682 Deer Street
Plymouth, MI 48170
(313) 963-7222
cstanyar@wowway.com

_____

Joseph E. Potchen (49501)
Tonya C. Jeter (P55352)
Attorney for Defendants
Mich. Dep't of Attorney General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700; Fax (517) 351-1152
potchenj@michigan.gov
jetert@michigan.gov
_____/

## DEFENDANTS' MOTION TO DISMISS

Defendants, Richard Snyder, in his official capacity as Governor of the State of Michigan and Bill Schuette, in his official capacity as the Michigan Attorney General ("Defendants"), through their attorneys, Joseph E. Potchen and Tonya C. Jeter, move under Fed. R. Civ. P. 12(b)(1) and (6) to dismiss Plaintiffs' complaint and state as follows:

1.      Plaintiffs April DeBoer and Jayne Rowse individually and as next friend of three minor children filed this lawsuit against Governor Snyder and Attorney General Schuette in their official capacities.  The complaint alleges that Michigan's adoption law, MCL 710.24, which restricts adoptions to single individuals or married couples, lacks a rational basis and violates the U.S. Constitution's Equal Protection Clause because it results in the disparate treatment of children of unmarried parents and of unmarried parents seeking to jointly adopt.

2.      Plaintiffs lack standing to bring this action in federal court individually or as the next friend of three minor children because they fail to allege sufficient injury in fact or the required causal connection between any alleged injury and Defendants' actions to establish subject matter jurisdiction.  As such, the Complaint should be dismissed pursuant the Fed. R. Civ. P. 12(b)(1).

3.      The Court should abstain from adjudicating this case because adoption laws and decisions regarding the best interests of children are uniquely within the province of the State.  Accordingly, the Complaint should be dismissed pursuant the Fed. R. Civ. P. 12(b)(1).

4.     Plaintiffs also fail to state sufficient facts showing that Michigan's Adoption Code, specifically MCL 710.24, violates the Equal Protection Clause of the Fourteenth Amendment.  Therefore, Plaintiffs fail to state a claim upon which relief can be granted and this action should be dismissed in accordance with Fed. R. Civ. P. 12(b)(6).

5.     On February 16, 2012, Defendants sought concurrence pursuant to Local Rule 7.1(a) from Plaintiffs' counsel, which was denied, necessitating this Motion.

6.     For the reasons set forth in this Motion and in the following Brief in Support, Defendants request that this Court grant their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

WHEREFORE, Defendants respectfully request this Court to grant its Motion to Dismiss Plaintiffs' Complaint, award Defendants attorneys' fees and costs and grant such further relief this Court deems just and equitable.

Bill Schuette
Attorney General

/s/ Joseph E. Potchen
/s/ Tonya C. Jeter
Assistant Attorneys General
Attorneys for Defendants
Health, Education & Family Services
Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
PotchenJ@michigan.gov
JeterT@michigan.gov
P49501
P55352

Dated:  February 17, 2012

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL DEBOER, individually and as parent
and next friend of N.D.-R, R.D.-R., and J.D.-R,
minors, and JAYNE ROWSE, individually and
as parent and next friend of N.D.-R, R.D.-R.,
and J.D.-R, minors,

   Plaintiffs,

v

RICHARD SNYDER, in his official capacity as
Governor of the State of Michigan,

and

BILL SCHUETTE, in his official capacity as
Michigan Attorney General,

   Defendants.

No. 2:12-cv-10285-BAF-MJH

HON. BERNARD A. FRIEDMAN

MAG. MICHAEL J.
HLUCHANIUK

_____

Dana M. Nessel (P51346)
Attorney for Plaintiffs
645 Griswold Street, Suite 3060
Detroit, MI  48226
(313) 556-2300
dananessel@hotmail.com

Carole M. Stanyar (P34830)
Attorney for Plaintiffs
682 Deer Street
Plymouth, MI  48170
(313) 963-7222
cstanyar@wowway.com

_____

Joseph E. Potchen (49501)
Tonya C. Jeter (P55352)
Attorney for Defendants
Mich. Dep't of Attorney General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700; Fax (517) 351-1152
potchenj@michigan.gov
jetert@michigan.gov_____/

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

### CONCISE STATEMENT OF ISSUES PRESENTED

I.  The injury necessary to invoke constitutional standing must be concrete, objective, and palpable, not merely abstract or subjective and it must be causally connected to some action of the Defendants. Here, Plaintiffs have failed to allege suffering any injury in fact and fail to establish the requisite causal connection. Therefore, Plaintiffs lack standing to pursue the equal protection claim set forth in their Complaint.

II. The subject of adoption and child-rearing is one which is within the exclusive power of Michigan to regulate. Federal courts have traditionally declined to exercise jurisdiction over cases involving adoption and child custody matters subject to state law. As such, this Court should abstain from adjudicating this case.

III. Michigan has a legitimate interest in encouraging a stable and nurturing environment of its adopted children. Moreover, Michigan has a rational basis for its long-standing adoption system which seeks to ensure predictability and supports the state's overall policy of recognizing of the importance of the traditional family. Therefore, the allegations contained in Plaintiffs' Complaint fail to establish any violation of their Equal Protection rights under the Fourteenth Amendment.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

*Authority*:

Fed. R. Civ. P. 12 (b)(1)

Fed. R. Civ. P. 12 (b)(6)

### **I.**

*Lujan v. Defenders of Wildlife et al*, 504 U.S. 555, 560 (1992).

*Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 667 (1993).

*Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009).

*United States v. Hays*, 515 U.S. 737, 743 (1995).

### **II.**

*Ankenbrandt v. Richards*, 504 U.S. 689, 693-703 (1992).

*Burford v. Sun Oil Co.*, 319 U.S. 315, 329 (1943).

*In re Adams*, 189 Mich. App. 540, 542 (1991).

*Lindley v. Sullivan,* 889 F.2d 124, 130 (7th Cir. 1989).

*Lofton v. Secretary, Florida Dept. of Children and Families*, 358 F.3d 804, 809 (11th Cir. 2004), cert den. 543 U.S. 1081 (2005).

*McLaughlin v. Cotner*, 193 F.3d 410, 412-413 (6th Cir. 1999).

### **III.**

*Dandridge v. Williams,* 397 U.S. 471, 485; 90 S. Ct. 1153; 25 L. Ed. 2d 491 (1970).

*Olympic Arms v. Magaw,* 91 F. Supp. 2d 1061, 1071 (ED Mich, 2000).

*Romer v. Evans,* 517 U.S. 620, 632 (1996).

*Wysocki v. Felt,* 248 Mich. App. 346, 354 (2001).

3

## INTRODUCTION

Children are the focal point of Michigan's adoption law. Created by the state's elected representatives, the Michigan Adoption Code reflects a societal view that the traditional family remains the ideal home environment for the growth and development of a child. Michigan has chosen an adoption system that seeks to ensure predictability and supports the state's overall policy of focusing on the best interests of all children.

Under Michigan's Adoption Code, only a single person or a married couple may adopt a child. This restriction does not discriminate based on personality or even sexual orientation. Single people who adopt may reflect a broad spectrum of Michigan's citizenry. But by guarding against custody battles among those with varied and uncertain levels of commitment to each other and upholding the State's policy of supporting the traditional family, the law steadfastly maintains its focus on protecting children. An emotionally fragile youth seeking a reliable home environment deserves such assurance.

While this legislative policy means that same-sex and unmarried heterosexual couples are not able to adopt jointly, the proper forum to make arguments seeking to re-structure Michigan's adoption system is with the State Legislature and not with this Court.

## STATEMENT OF FACTS

### A.  Relevant factual background.[1]

Plaintiffs, April DeBoer and Jayne Rowse, are an unmarried couple residing in Hazel Park, Michigan (Complaint, ¶ 6).  In February 2007, Ms. DeBoer and Ms. Rowse participated in a commitment ceremony (Complaint, ¶ 13).  In November 2009, Ms. Rowse, as a single person, legally adopted child N, born January 25, 2009 (Complaint, ¶ 9).  Sometime in 2010, Ms. Rowse, again as a single person, legally adopted another child, J, born November 9, 2009 (Complaint, ¶ 10).  In April 2011, Ms. DeBoer, as a single person legally adopted child R, born February 1, 2010 (Complaint, ¶ 8).

Ms. DeBoer and Ms. Rowse would like to jointly adopt N, J and R. (Complaint, ¶ 11-12). They allege that Michigan's adoption law, MCL 710.24, which restricts adoptions to single individuals or married couples, lacks a rational basis and violates the U.S. Constitution's Equal Protection Clause because it results in the disparate treatment of children of unmarried parents and of unmarried parents seeking second-parent adoption (Complaint, ¶ 20).

### B. Michigan law does not allow multiple unmarried persons to make a joint adoption.

In 1945, Michigan amended its adoption law to include the following language that limits adoption to single persons or married couples:

---

[1] For the purposes of this Motion only, Defendants accept these factual statements in Plaintiffs' complaint.

Whenever any person shall desire to adopt any minor child, and to bestow upon said child his family name, or to adopt any minor child without a change of name, with intent to make said child his heir, said person, together with his wife or her husband, if married, shall file a petition with the probate court of the county wherein petitioner resides. 324 Public Act 1945.

Today, the law reads essentially the same and contains the same limitation:

If a person desires to adopt a child or an adult and to bestow upon the adoptee his or her family name, or to adopt a child or an adult without a name change, with the intent to make the adoptee his or her heir, that person, together with his wife or her husband, if married, shall file a petition with the court …"   MCL 710.24(1).

In the past few years, there have been a number of proposals to allow second-parent adoption in Michigan introduced in the Legislature (2005, 2007, 2009)[2], but the legislation has not been enacted.  Recently, second-parent adoption bills have been reintroduced in the Michigan House and Senate a fourth time, in 2011 (H.B. 4249 of 2011, S.B. 0167 of 2011).  Again, the bills were not adopted.  Thus, while there have been numerous reviews of Michigan's adoption law and a number of attempts to change the laws to include second-parent adoptions, Michigan's legislature has refused to expand the law in this area. Plaintiffs now seek to circumvent these decisions by seeking relief in this Court.

---

[2] See H.B. 5399 of 2005, H.B. 4259 of 2007, S. B. 666 of 2007 and H.B. 4131 of 2009. These bills can be obtained from the Michigan Legislature web site http://www.legislature.mi.gov/(S(yzzalz45g04uro45cfum0245))/mileg.aspx?page=Bills.

6

## STANDARD OF REVIEW

Dismissal of Plaintiffs' complaint under Rule 12(b)(1) is appropriate where the Court lacks subject matter jurisdiction.  A Rule 12(b)(1) motion that attacks the factual basis for jurisdiction requires the trial court to weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists.  *Abbott v. Michigan*, 474 F.3d 324, 327 (6th Cir. 2007).  While a facial jurisdictional challenge "merely questions the sufficiency of the pleading," a factual jurisdictional challenge requires the court to "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  A Rule 12(b)(1) factual-attack analysis does not require a presumption of truth with respect to the facts alleged in the complaint. *U.S. v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994).  Furthermore, a court may, on its own initiative, dismiss a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) where the allegations of the complaint are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir. 1999).

Under Rule 12(b)(6), dismissal is appropriate where a plaintiff fails to state a claim upon which relief can be granted. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above a speculative level, on the

7

assumption that all the allegations in the complaint are true . . . ." *Twombly*, 550 U.S. at 555-556 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "Facial plausibility" requires the plaintiff to include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949 (2009). If a complaint does not meet that standard, the opposing party may move to dismiss it for failure to state a claim at any time before filing an answer. Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

## I.   PLAINTIFFS LACK STANDING TO PURSUE THE CLAIMS SET FORTH IN THE COMPLAINT.

Federal courts are courts of limited jurisdiction. First among the limits on federal courts' jurisdiction is the requirement of standing. A party who does not have standing may not invoke the federal court's subject matter jurisdiction.

The long followed three-part test for determining standing requires the Plaintiffs to show:

(1) "injury in fact," i.e. an invasion of a legally protected interest that is

(a) concrete and particularized, and

(b) actual or imminent, not conjectural or hypothetical,

(2) a causal relationship between the injury and the challenged conduct, meaning the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court," and

8

> (3) a likelihood that the injury will be redressed by a favorable decision, meaning that it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

See *Lujan v. Defenders of Wildlife et al*, 504 U.S. at 560-561 (1992).  These elements are the "irreducible minimum" required by the Constitution. *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 667 (1993).  Plaintiffs' fail to meet the first two elements of the three-part test and, as a result, their complaint should be dismissed under Rule 12(b)(1).

## A.   Plaintiffs' fail to set forth a legally recognized injury in fact.

As stated above, the injury necessary to invoke constitutional standing must be concrete, objective, and palpable, not merely abstract or subjective.  See also *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  Without an injury, there is nothing for a court to redress.  There must be a "real need to exercise the power of judicial review in order to protect the interests of the complaining party," particularly when the review by a federal court of an enacted state statute is at issue.  *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974).  Where that need does not exist, allowing courts to oversee legislative or executive action "would significantly alter the allocation of power . . . away from a democratic form of government."  *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009).

Here, a review of Plaintiffs' complaint reveals the absence of any concrete, objective and palpable injury, either actual or threatened, that has been suffered by either Ms. DeBoer or Ms. Rowse or the three children they adopted.  Both Ms. DeBoer and Ms. Rowse have been approved to adopt and each child has achieved

9

adoption.  Plaintiffs do not allege that their adopted children suffer any sociological or psychological injury as a result of their current adoptive situation.  In fact, Plaintiffs point out that they have created a stable, loving household for these three children (Complaint ¶ 13).

Indeed, based on the allegations contained in the complaint, it does not appear that either Ms. DeBoer, Ms. Rowse or the children they adopted have suffered any "injuries in fact."  According to the complaint, Ms. DeBoer and Ms. Rowse share finances, they make decisions jointly regarding their own lives and the lives of their children, they both cook and care for the children, they both attend to the children's medical needs and both are involved in taking the children to their many doctor and therapy visits and they coordinate their work schedules to be home with the children (Complaint ¶ 13).  Plaintiffs stated concerns about inheritance and succession can be cured through alternative legal measures, such as, by will, by power of attorney, by trust, or by executing legal documents designating the children as their legal beneficiaries, and/or appointing each other as their child/ren's caretaker in case of death.  Michigan's Adoption Code does not prevent such action.

Finally Plaintiffs' general statements about possible sociological and psychological effects on children with two parents in general do not establish an injury in fact.  These allegations are entirely conjectural and hypothetical and are not specific to Plaintiffs.  In fact, based on the complaint, it appears the children are being raised in a loving, caring environment with two people who are committed to

10

their wellbeing.  Standing to sue must be proven, not merely asserted, in order to provide a concrete case or controversy and to confine the courts' rulings within the proper judicial sphere.  *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496-497 (5th Cir. 2007) (*en banc*).  Due to Plaintiffs' failure to allege sufficient facts to show an injury in fact, they lack standing and this Court should dismiss their Complaint.

### B.   Plaintiffs fail to show a causal relationship between any alleged injury and any conduct by Defendants

The Supreme Court recommends that even when a plaintiff has alleged redressable injury sufficient to satisfy the standing requirements, courts should refrain from "adjudicating abstract questions of wide public significance which amount to generalized grievances." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-75, (1982). Based on the same reasoning, the Supreme Court has refused to recognize "a generalized grievance against allegedly illegal government conduct as sufficient for standing."  *United States v. Hays*, 515 U.S. 737, 743 (1995).

Here, the underlying basis of this lawsuit appears to be more of a generalized grievance related to Plaintiffs' legal inability to marry in Michigan rather than their inability to adopt jointly.[3]  Such a grievance, however, goes beyond the focus of Michigan's Adoption Code.   Moreover, there is no causal connection between these laws and any actions of the named defendants.  While Governor Snyder and

---

[3] See Mich. Const. Art. I, § 25 ("marriage" is defined to be "the union of one man and one woman"); also see MCL 551.1 ("marriage" is defined to be between a man and a woman).

11

Attorney General Schuette are charged with enforcing the laws of this state, there is no allegation that either has somehow improperly done their job.  Thus, Plaintiffs' alleged injuries are not connected to any action taken by the named Defendants.  Again, where a plaintiff lacks standing, federal courts are divested of subject matter jurisdiction.  See *Allen v. Wright*, 468 U.S. 737, 750-751(1984).

## II.     THIS COURT SHOULD ABSTAIN FROM ADJUDICATING THIS CASE

The *Burford* abstention doctrine prevents federal courts from exercising jurisdiction over difficult questions of state law or areas of coherent state policy.  *Burford v. Sun Oil Co.*, 319 U.S. 315, 329; (1943).  *Burford* applies in two situations: first, where there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case then at bar"; second, where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.  *Adrian Energy Assoc v. Public Service Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007).  Both situations apply to the case at bar.

In this case, Plaintiffs challenge §24 of Michigan's Adoption Code, which designates prospective adoptive parents in Michigan <u>and</u> was enacted to protect and promote the best interests of adoptees and to achieve permanency and stability for them as quickly as possible.  See also MCL 710.21a (b) and (d).  This statutory scheme falls squarely within the parameters of *Burford* as it involves a question of

12

state law bearing on strongly-held public policy, *i.e.* imitation of the traditional family for adopted children, whose importance transcends the results in the case at bar. Indeed, the outcome of this case *will* affect the application of adoption law state-wide. In addition, Michigan has an overriding interest in the protection of its prospective adoptive children to ensure they are in suitable homes, and the exercise of federal review would be disruptive of Michigan's efforts to establish a coherent policy with respect to adoptions. In enacting the Michigan Adoption Code, Michigan established a coherent policy concerning regulation of adoptions and child custody matters. Michigan has enacted its own state laws and provided a scheme for administrative and judicial review.

The Sixth Circuit Court of Appeals has recognized that the substantive aspect of the subject of family law and domestic relations is one uniquely within the province of the respective states. M*cLaughlin v. Cotner*, 193 F.3d 410, 412-413 (6th Cir. 1999); *Wise v. Bravo*, 666 F.2d 1328, 1332 (10th Cir. 1981). In addition, the Supreme Court has repeatedly recognized that domestic relations matters are purely the province of state law. *McCarty v. McCarty*, 453 U.S. 210, 220 (1981); *Popovici v. Agler*, 280 U.S. 379 (1930). "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the state and <u>not to the laws of the United States</u>. (emphasis added)." *In re Burrus*, 136 U.S. 586, 593-94 (1890); *see Lommen v. McIntyre*, 125 F. App'x 655, 658 (6th Cir. 2005); *Partridge v. Ohio*, 79 F. App'x 844, 845 (6th Cir. 2003).

13

While the power to legislate family law is not without limitations, it is within the exclusive province of the states to legislate. Michigan's statutory procedures, including those regulating the creation of parental responsibilities through adoption, recognize the overriding interest of the state in protecting and providing for children. See MCL 710.21a (a-e). Unlike biological parentage, adoption is wholly a creation of state law. *Lindley v. Sullivan,* 889 F.2d 124, 130 (7th Cir. 1989). And courts have recognized this important distinction and found that adoption is not a right but a statutory privilege. *Lindley*, 889 F.2d at 130-131; See also *Lofton v. Secretary, Florida Dept. of Children and Families*, 358 F.3d 804, 809 (11th Cir. 2004), cert den. 543 U.S. 1081 (2005). *Griffith v. Johnston*, 899 F.2d 1427, 1437-38 (5th Cir. 1990); *Collier v. Krane*, 763 F. Supp. 473, 476 (D. Colo. 1991).

The same is true in Michigan. The Michigan Court of Appeals has held that "[t]he entire subject of adoption is governed solely by statute." *In re Adams*, 189 Mich. App. 540, 542; 473 N.W.2d 712 (1991). Because adoption is wholly within the control of the Legislature, adoption statutes are strictly construed. *Adams*, 189 Mich. App. at 542-543. Since statutory authority limits the group of prospective adoptive parents to single persons and married persons filing a joint petition for adoption with his or her spouse, any extension of this group must come from the statutory authority, and not from the court. *Adams*, 189 Mich. App. at 547.

In *Adams*, the biological father's parental rights were terminated after the trial court granted a stepparent adoption. Sometime after the stepparent adoption, the biological mother divorced the adoptive father and jointly filed an adoption

14

petition with the biological father. (At the time the petition was filed, the biological mother had remarried, and the biological father was already married to a new spouse.)  The Michigan Court of Appeals held that the trial court properly dismissed the petition on a finding that it did not have any statutory authority to permit the adoption when the petitioners were both married to different people, despite all the parties consenting to the adoption. *Adams*, 189 Mich. App. at 543.

Furthermore, Michigan courts recognize that, as a general rule, making social policy is the realm of the Legislature, not the courts. *Van v. Zahorik*, 460 Mich. 320, 327; 597 N.W.2d 15 (1999); *see* also, *In re Kurzyniec*, 207 Mich. App. 531, 543; 526 N.W.2d 191 (1994).  "This is especially true when the determination or resolution requires placing a premium on one societal interest at the expense of another: 'The responsibility for drawing lines in a society as complex as ours—of identifying priorities, weighing the relevant considerations and choosing between competing alternatives—is the Legislature's, not the judiciary's.'" *Van*, *supra*, citing O'D*onnell v. State Farm Mut. Automobile Ins. Co.*, 404 Mich 524, 542; 273 N.W.2d 829 (1979).

It is patently clear that Plaintiffs are attempting to use the federal district court to strong arm Michigan's Legislature to pass laws allowing for multiple unmarried person adoptions.  Notably, much of their complaint is premised upon alleged sociological and psychological studies regarding the benefits of having two parents.  These alleged studies, however, have presumably been rejected by the state's legislative body.  It is readily apparent that the science in this area is

unclear and as such, the state should be left to determine what it views as being in the best interest of the adoptive child.  "The state's overriding interest [in adoption proceedings] is not providing individuals the opportunity to become parents, but rather identifying those individuals whom it deems most capable of parenting adoptive children and providing them with a secure family environment." *Lofton,* 358 F.3d at 811.  Such matters are "peculiarly suited to state regulation and control and peculiarly unsuited to control by federal courts." *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981).  Since the adoption process is entirely a creature of state law, and parental rights and expectations involving adoption have historically been governed by legislative enactment, this court should abstain from adjudicating this case.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE THEY FAIL TO ALLEGE A SPECIFIC VIOLATION OF THEIR EQUAL PROTECTION RIGHTS.

### A.   The rational basis test

It is well settled that classifications that neither involve a fundamental right nor create a suspect classification are accorded a strong presumption of validity. *North Dakota v. U.S.,* 495 U.S. 423, 433 (1990).  Here, as stated in the previous discussion, there is no fundamental right to adopt.  And Michigan's limitation of adoption to single persons and married couples does not create a suspect classification.  In cases such as this one, the Supreme Court's attitude toward the statutory work of legislatures has been deferential.  As stated in *Felix v. Milliken,* 463 F. Supp. 1360, 1365 (1978) where the court quoted Chief Justice Warren in *McGowan v. Maryland*, 366 U.S. 420, (1961):

16

> Although no precise formula has been developed, the Court has held
> that the Fourteenth Amendment permits the States a wide scope of
> discretion in enacting laws which affect some groups of citizens
> differently than others. The constitutional safeguard is offended only if
> the classification rests on grounds wholly irrelevant to the
> achievement of the State's objective. State legislatures are presumed to
> have acted within their constitutional power despite the fact that, in
> practice, their laws result in some inequality. A statutory
> discrimination will not be set aside if any state of facts reasonably may
> be conceived to justify it.

"In the area of economics and social welfare, a state does not violate the
Equal Protection Clause merely because the classification made by its laws are
imperfect." *Dandridge v. Williams,* 397 U.S. 471, 485 (1970).

This deference is rooted in practical considerations; as such, it will not be
enough for Plaintiffs to complain that the challenged statute discriminates
generally.  Simply put, all laws classify; all laws discriminate. "Classifications" and
"discrimination" are essential to and inherent in the law.  *See,* Michael J. Klarman,
An Interpretive History of Modern Equal Protection, 90 Mich. L. Rev. 213 (1991).
Moreover, since all laws necessarily discriminate, a court cannot be suspicious of
such laws - *i.e.*, all laws - because classification of some sort is normal, inevitable
and necessary.  The Equal Protection Clause cannot prohibit all discrimination, and
a reasonable interpretation of it must focus only on the worst classifying statutory
schemes.

In such situations, courts have developed less restrictive standards to
evaluate the type of classification involved in this case. *See, San Antonio Indep. Sch.
Dist. v. Rodriguez,* 411 U.S. 1 (1973) (illustrating and describing a "two-tier"
analysis of equal protection doctrine).  The rational basis test affords wide latitude

to social and economic legislation. "'The Constitution presumes that even improvident decisions will eventually be rectified by the democratic process.'" *Olympic Arms v. Magaw,* 91 F. Supp. 2d 1061, 1071 (ED Mich, 2000), quoting *City of Cleburne v. Cleburne Living Ctr,* 473 U.S. 432, 440 (1985).  Whether the Legislature was "'unwise in not choosing a means more precisely related to its primary purposes is irrelevant.'"  *Breck v. Michigan,* 203 F.3d 392, 396 (6th Cir. 2000), quoting *Vance v. Bradley,* 440 U.S. 93, 109 (1979).  Thus, a legislative classification is accorded a strong presumption of validity and "must be upheld against equal protection challenge if there is any reasonably conceivable set of facts that could provide a rational basis for the classification." *Heller v. Doe,* 509 U.S. 312, 320 (1993).  This is true "even if the law seems unwise or works to disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer v. Evans,* 517 U.S. 620, 632 (1996).  If there is a rational basis for the legislation, some imperfections and inequalities will be tolerated.  *Olympic Arms,* 91 F. Supp. 2d at 1075, quoting *Dillinger v. Schweiker,* 762 F.2d 506, 508 (6th Cir. Ohio 1985).  A classification does not fail rational-basis analysis because it in practice results in some inequality.  Under the rational basis test, the question is simply whether the challenged legislation is rationally related to a legitimate government interest. *Heller v. Doe,* 509 U.S. at 320 (1993).

In *Hadix v. Johnson,* 230 F.3d 840, 843 (6th Cir, 2000), the Sixth Circuit reiterated the concept that a statute will be afforded a strong presumption of validity and must be upheld as long as there is a rational relationship between the

18

disparity of treatment and some legitimate government purpose.  The government has no obligation to produce evidence to support the rationality of its statutory classifications and may rely entirely on rational speculation unsupported by any evidence or empirical data.  *Hadix*, 230 F.3d at 843.  Plaintiffs, on the other hand, bear the heavy burden of "'negating every conceivable basis which might support [the legislation], . . . whether or not the basis has a foundation in the record."' *Hadix*, 230 F.3d at 843.

> **B.** **Michigan's basis for limiting adoptions to single persons and married couples adopting jointly is rationally-related to a legitimate governmental interest.**

Michigan courts interpreting early adoption statutes reaffirmed the purpose of adoption is to replicate the natural family.  To that end, the Michigan Supreme Court held that "[i]n passing the adoption statute the Legislature evidently intended, insofar as language would make it possible, to place the adopted child in the family in the same position as the natural child." *Burk v. Burk*, 192 N.W. 706, 707; 222 Mich. 149 (Mich 1923); *In re Rendell's Estate*, 221 N.W. 116, 118; 244 Mich. 197 (Mich 1928) ("the legal status of an adopted child . . . is made identically the same as though it had been born to the adoptive parents in lawful wedlock"). As such, joint adoptions by unmarried individuals in Michigan would run contrary to the historical purpose of adoption, *i.e.*, to imitate the natural family, and "it [is] inconsistent with the general scope and purpose of adoption statutes to allow two unmarried persons to make a joint adoption." *In re Adams*, 189 Mich. App. 540, 544; 473 N.W.2d 712 (1991).  The recognition of a traditional family is also supported by the U.S. Supreme Court. *Michael H. v. Gerald D.,* 491 U.S. 110, 122.

19

(1989). In *Michael H.* at 124, the Supreme Court stated, "[o]ur traditions have protected the marital family . . . ." The policy concern behind this rationale is the interest in promoting the "peace and tranquility of States and families." *Michael H. 491 U.S.* at 125. The institution of family is deeply rooted in this nation's history and tradition.

Thus, Michigan's adoption code, where only a single person or a married couple may adopt a child, steadfastly maintains its focus on protecting children. It ensures that numerous unmarried people cannot jointly adopt one child, thus creating situations that run quite contrary to the traditional family. This limitation makes logical sense and does not discriminate based on personality or even sexual orientation. Rather, this system guards against custody battles among those with varied and uncertain levels of commitment to each other and upholds the state's overall policy of supporting the traditional family. By limiting adoption to single persons and married couples, Michigan has created a logical and predicable legal framework. Michigan's adoption framework creates stability in the law and legal predictability, which are all in the best interest of the child.

Plaintiffs may rely on an unpublished Michigan Court of Appeals decision to claim that Michigan has a sufficient legal framework to address custody disputes between unmarried individuals who jointly adopt. *Giancaspro v. Congleton*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2009 (Docket No. 283267). *Giancaspro*, however, focused on the application of the U.S. Constitution's Full Faith and Credit Clause on Michigan's Child Custody Act. The

20

*Giancaspro* court did not address Michigan's rational basis for its adoption code.

Notably, the Michigan Court of Appeals determined that the trial court erred in

considering whether the parties could have jointly adopted the minor children had

they attempted to do so in Michigan, and it erred in considering whether the

parties' relationship with each other could be recognized in Michigan:

> The only relevant consideration in this matter is each individual
> party's established relationship as an adoptive parent with the
> children, not their relationship with each other. As discussed, the Full
> Faith and Credit Clause compels the courts of this state to recognize,
> pursuant to the Illinois Judgment of Adoption, that both parties are
> adoptive parents of the minor children.

Given the facts of *Giancaspro*, that case is clearly distinguishable from the case at

bar.

In any event, Michigan's Adoption Code provides that adoption shall be by

single person or a married couple.  MCL 710.24.  Again, the Michigan Court of

Appeals confirmed that "it has been held inconsistent with the general scope and

purpose of adoption statutes to allow two unmarried persons to make a joint

adoption."  *In re Adams*, 189 at 544.  Michigan's Adoption Code is consistent with

the state's aim of attempting to imitate the natural family for adopted children.

The adoption by multiple, unmarried persons differs so radically from traditional

imitative adoption that mandatory recognition of such adoptions would require

Michigan to jettison the historic purpose of its adoption laws.  Because recognition

of adoptions by multiple, unmarried persons is so fundamentally at odds with the

longstanding purpose of Michigan's adoption laws, Michigan should not be forced to

recognize multiple, unmarried persons as a prospective adoptive parent.  Simply

put, while it has been said that it takes a village to raise a child, Michigan law does not allow the entire village to adopt the child.  Notwithstanding, this issue can always be revisited by the state Legislature, duly elected to represent the entire Michigan citizenry, and who has the legal authority to make law.

## CONCLUSION AND RELIEF REQUESTED

Defendants respectfully request this Court to grant its Motion to Dismiss Plaintiffs' Complaint, award Defendants attorneys' fees and costs and grant such further relief this Court deems just and equitable.

/s/ Joseph E. Potchen
Joseph E. Potchen (P49501),
Assistant Attorney General
/s/ Tonya C. Jeter
Tonya C. Jeter (P55352),
Assistant Attorney General
Attorneys for Defendants
Health, Education & Family Services
Division
P.O. Box 30758
Lansing, MI  48909
(517) 373-7700
potchenj@michigan.gov
jetert@michigan.gov

Dated:  February 17, 2012

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2012, I electronically filed the foregoing document(s) with the Clerk of the Court using the ECF System, which will provide electronic notice and copies of such filing of the following to the parties:

Defendants' Motion to Dismiss and Defendants' Brief in Support of Motion to Dismiss

/s/ Joseph E. Potchen
Assistant Attorney General
Attorney for Defendants
Health, Education & Family Services
Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
PotchenJ@michigan.gov
P49501

23