UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL DEBOER, *et al.*,

    Plaintiffs,

-vs-                         ED Mi #12-civ-10285
                             Hon. Bernard A. Friedman

RICHARD SNYDER, *et al.*,

    Defendants.
_____/

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

*Baker v Nelson.* The State Defendants' reliance on *Baker v Nelson*, 409 US 810 (1972), is entirely misplaced for the reasons detailed at Plaintiffs' Brief in Opposition to the State Defendants' Motion for Summary Judgment (R76), pp 17-20.

*Standard of scrutiny.* For the reasons set out in Plaintiffs' Brief in Support of Motion for Summary Judgment (R67), pp 2-4, the applicable standard of scrutiny in this case should be heightened scrutiny. The State Defendants are simply wrong in asserting that binding Sixth Circuit precedent precludes this Court from applying that standard; the Sixth Circuit precedent upon which the State Defendants rely was overruled in *Lawrence v Texas*, 539 US 558 (2003).[1] Moreover, while the Sixth

---

[1] In *Davis v Prison Health Services*, 679 F3d 433, 438 (6th Cir 2012), the Sixth Circuit relied upon *Scarbrough v Morgan County Board of Education*, 470

Circuit held in *Equality Foundation of Greater Cincinnati, Inc v City of Cincinnati*, 128 F3d 289, 292-294 (6th Cir 1997), that an equal protection claim based on a *local* governmental unit's refusal to provide *preferential treatment* based on sexual orientation is tested under the rational basis standard, the facts of the instant case are starkly different; this case involves *constitutionally embedded discrimination* based on sexual orientation. To the Sixth Circuit, the difference is greatly significant. 128 F3d at 297. For these reasons, *Equality Foundation* does not preclude this Court from applying a heightened scrutiny analysis.

<u>*Michigan's constitutional and statutory ban on marriage equality cannot survive even rational basis scrutiny.*</u> Even if this Court applies a rational basis standard of scrutiny, Michigan's constitutional and statutory ban on marriage equality cannot stand.

The State Defendants' argument that discrimination against gays and lesbians with respect to the right to marry is justified in order to promote responsible procreation holds no water: If the State Defendants' argument were viable, opposite-

---

F3d 250, 261 (6th Cir 2006). *Davis*, 679 F3d at 438. S*carbrough* itself relied upon *Equality Foundation of Greater Cincinnati, Inc v City of Cincinnati*, 128 F3d 289, 292-294 (6th Cir 1997). *Davis*, 470 F3d at 261. *Equality Foundation*, in turn, based its holding squarely on *Bowers v Hardwick*, 478 US 186, 192 (1986), which was overruled by the Supreme Court in *Lawrence*, 539 US at 578. Consequently, those precedents have no continued vitality after *Lawrence.*

sex couples could be prohibited from marrying unless they demonstrated a capacity or desire to procreate. This, of course, is not the law; the state does not condition opposite-sex couples' right to marry on a desire or capacity to procreate or adopt, nor could it constitutionally do so. At least as important, same-sex marriage does not and will not in any way undermine or interfere with the rights or desires of heterosexuals to marry or to procreate. As the district court recognized in *Perry v Schwartzenegger*, 704 FSupp2d 921, 972 (ND Cal 2010), decision left intact by *Hollingsworth v Perry*, 133 SCt 2652 (2013), neither logic nor experience in any way support the claim that recognizing the right to same-sex marriage in any way deters or inhibits opposite-sex couples who wish to marry from doing so; the suggestion is nothing short of absurd. See also Brief in Support of Plaintiffs' Motion for Summary Judgment (R67), pp 14-21.

    The State Defendants' attempt to downplay the significance of *Romer v Evans*, 517 US 620 (1996), in undermining their rational basis argument is also misplaced. Moreso than in any other marriage equality case currently pending in the country, this case is about both marriage and all of the *incidents* of marriage. Michigan's marriage amendment and statutes do far more than simply "protect heterosexual marriage"; these pervasively discriminatory laws impact gay and lesbian citizens and their children at least as greatly as the referendum struck down in *Romer*. Michigan's

marriage amendment undeniably goes far beyond outlawing marriage equality; it prohibits recognition of *all* civil unions or domestic partnerships.[2] The stunning list of other rights foreclosed to DeBoer, Rowse and their three special needs children as a result of Michigan's marriage equality ban – rights that any parent understandably wants and expects for their family – further utterly refutes the State Defendants' *Romer* claim. See Brief in Support of Plaintiffs' Motion for Summary Judgment (R67), p 12, n 9.

The State Defendants' attempt to distinguish §3 of the Defense of Marriage Act [DOMA], struck down in *United States v Windsor*, 133 SCt 2675 (2013), from the Michigan marriage amendment for purposes of evaluating the instant constitutional claim is similarly lacking. Section 3 of DOMA denied equal protection by expressing "'both moral disapproval of homosexuality, and a moral conviction that heterosexuality better comports with traditional (especially Judeo-Christian) morality' . . . [I]nterference with the equal dignity of same-sex marriages . . . [is] more than an incidental effect of" DOMA. "It was its essence." *Windsor*, 133 SCt at 2693, quoting from H.R. Rep. #104-664, p 16. The same is true of the Michigan

---

[2]Following passage of the amendment, the Michigan Supreme Court held that its terms also required denial of partner benefits for state workers. See Brief of *Amici* Michigan Law Professors (R64-1), pp 19-20; *National Pride at Work, Inc v Granholm*, 481 Mich 56 (2008).

amendment. The language in both is, for all practical purposes, identical, and the "essence" is the same.

*Animus.* The State Defendants both ignore the plain language of the Michigan marriage amendment and misconstrue Plaintiffs' and their *amici*'s arguments regarding *animus*. In prohibiting any recognition whatever of any same-sex union "similar" to a marriage, the amendment by its very terms manifests *animus* against gay and lesbian citizens. Moreover, neither Plaintiffs nor their *amici* are claiming that a majority of the state's *electorate* was "bigot[ed]" in voting for the Michigan Marriage Amendment. Rather, it was the amendment's *proponents* who were motivated by *animus*, a point thoroughly documented in the Brief *Amicus Curiae* of Michigan Law Professors (R64-1), pp 8-22. The State Defendants not only conflate *proponent* motivation with *voter* motivation, they tellingly ignore the former.

*The political process and constitutional rights.* The State Defendants' arguments in favor of allowing the political process to run its course is perhaps the ultimate red herring. As the Supreme Court has repeatedly emphasized, constitutional rights cannot be diluted or denied through the political process; citizens' entitlement to the protection of the Constitution does not depend on the outcome of any election.

The State Defendants seriously mislead the Court in suggesting that Michigan is pursuing a policy of "proceeding incrementally". State Defendants' Brief in

5

Opposition to Plaintiffs' Motion for Summary Judgment (R74), p 17. To the contrary, Michigan law in relation to gay and lesbian citizens' rights has been steadily regressing. As detailed in Plaintiffs' Brief in Support of Motion for Summary Judgment, marriage equality was initially banned in the state as a matter of statutory law; the statutory ban was then enshrined in the state's constitution (as the only clause in that charter requiring rather than prohibiting discrimination); most recently, at the urging of the State Defendants and their *amici*, the scope of the ban was extended to partner benefits in *National Pride at Work*, *supra*.[3]

Moreover, while it may well be true that a vote of Michigan's citizens in 2016 would repeal the marriage amendment and its statutory counterparts, if – as Plaintiffs assert – these laws are unconstitutional today, Plaintiffs are entitled to relief, from this Court, now, not from the electorate (after an extremely expensive and, ultimately, uncertain political struggle) three years from now.

*Children raised in same-sex and opposite-sex families.* The State Defendants' argument that there remains a debate as to how children fare when raised by same-sex

---

[3]After arguing in their Brief in Support of Motion for Summary Judgment (R69-1) that Plaintiffs "can provide security for the children" through "guardianships, conservatorships, wills, durable powers of attorney ... and testamentary trusts", Brief, p 33, the State Defendants concede in their Brief in Opposition to Plaintiffs' Motion for Summary Judgment (R74) that such arrangements don't provide anywhere near the same level of protection for children involved. Brief, pp 20-21.

6


couples in comparison with how they fare when raised by opposite-sex couples also fails for all the reasons detailed in Plaintiffs' Brief in Opposition to State Defendants' Motion for Summary Judgment (R76), pp 12-15, and attachments thereto.  Further, the State Defendants' primary authority as to this argument has now conceded that the matter of "no differences" is essentially considered "settled ... in the wider social science community".  M. Regnerus, *Q & A With Mark Regnerus About the Background of His New Study,* p 3 (2012), http://www.patheos.com/ blogs/blackwhiteandgray/ 2012/06/q-a-with-mark-regnerus-about-the-background-of-his-new-study/ .  Exhibit C, appended to Plaintiffs' Brief in Opposition to State Defendants' Motion for Summary Judgment.  Notably, Regnerus has also acknowledged that "it's possible" that his study "reveals evidence that *gay and lesbian parents would benefit from access to the relative security of marriage*".  *Id.*, p 2 (emphasis added).[4]

This notion – that the children of gay and lesbian parents might just fare better if their parents were treated equally rather than persecuted  – is one that has, perhaps, resonated with a majority of the United States Supreme Court.  As the Court stressed

---

[4] Indeed, as more and more heterosexuals develop social relationships with gays and lesbians and their families, it becomes increasingly impossible for those opposing marriage equality and second parent adoption rights to maintain the fiction that there is a legitimate debate as to how children fare when raised in a stable same-sex parent household.

as to DOMA in *Windsor*:

> *It humiliates tens of thousands of children now being raised by same sex couples. The law in question makes it even more difficult for the children to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives.*

133 SCt at 2694 (emphasis supplied).

<u>*Conclusion.*</u>  This Court has now seen all of the arguments the parties and their respective *amici* have to offer as to the issues before it.  For all the reasons stated in Plaintiffs' and their *amici*'s briefs, the Michigan marriage amendment and its statutory counterparts, as well as the provision of Michigan's adoption laws denying the adult Plaintiffs the right to seek to adopt each other's children, deny them due process and the equal protection of the laws.  The time is ripe for this Court to right these wrongs, and Plaintiffs respectfully ask it to do so.

## RELIEF REQUESTED

WHEREFORE, for all of the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for summary judgment, deny the State Defendants' motion for summary judgment and grant the other relief requested in the Amended Complaint.

Respectfully submitted,

| | |
|---|---|
| *s/Carole M. Stanyar* | *s/ Dana Nessel* |
| CAROLE M. STANYAR P34830 | DANA M. NESSEL P51346 |
| 221 N. Main Street, Suite 300 | 645 Griswold Street, Suite 3060 |
| Ann Arbor, MI 48103 | Detroit, MI 48226 |
| (313) 819-3953 | (313) 556-2300 |
| cstanyar@wowway.com | dananessel@hotmail.com |

Dated: September 17, 2013                    Attorneys for Plaintiffs

Of counsel:

| | |
|---|---|
| *s/Robert A. Sedler* | *s/ Kenneth M. Mogill* |
| ROBERT A. SEDLER  P31003 | Kenneth M. Mogill P17865 |
| Wayne State University Law School | MOGILL, POSNER & COHEN |
| 471 W. Palmer Street | 27 E Flint Street, 2nd Floor |
| Detroit, MI 48202 | Lake Orion, MI 48362 |
| (313) 577-3968 | (248) 814-9470 |
| rsedler@wayne.edu | kmogill@bignet.net |

## CERTIFICATE OF SERVICE

CAROLE M. STANYAR hereby certifies that a copy of Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for Summary Judgment, and this Certificate of Service were served upon Assistant Attorneys General Kristin Heyse and Tonya Jeter, and upon counsel for Ms. Brown, Andrea Johnson and Michael Pitt, ECF filers, on September 17, 2013.

                                                        *s/Carole M. Stanyar*
                                                        CAROLE M. STANYAR P34830