UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL DEBOER, *et al.*,

            Plaintiffs,            Civil Action No. 12-cv-10285
                                      HON. BERNARD A. FRIEDMAN

vs.

RICHARD SNYDER, et al.,

            Defendants.

---

**PLAINTIFFS' COMBINED ANSWER AND BRIEF IN RESPONSE TO
STATE DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE
REFERENCES TO SECOND-PARENT ADOPTIONS
AND TO EXCLUDE WITNESSES**

The Court should deny the State Defendants' Motion *in Limine* to exclude references to second-parent adoptions and to exclude witnesses Dr. Nancy Cott and Dr. George Chauncey for the reasons set out below.

**A. References to second-parent adoptions are relevant to the factual inquiry framed by the Court.**

Evidence pertaining to second-parent adoptions is relevant and admissible. The State Defendants argue that the Court should exclude all such evidence because adoption is not an issue in this trial. *See* Brief in Support of State Defendants' Motion to Exclude References to Second-Parent Adoptions and to Exclude Witnesses ("Brief"), p 5. State Defendants are incorrect. They fail to recognize that evidence on the adoption issue directly informs the constitutional validity of the Michigan

1

Marriage Amendment (MMA).   In particular, State Defendants have offered a rationale related to child well-being as a justification for the MMA. *See, e.g.*, R125-2, Price Expert Report, p 3.  They are arguing here that children are harmed if they are raised by same-sex parents. Plaintiffs are entitled to rebut this claimed justification by presenting evidence demonstrating that the MMA works directly against the interests of children. The MMA harms children by, *inter alia,* denying children of same-sex couples the protections of a legal parent-child relationship with both parents.

The fact that same-sex parents are prohibited from second-parent adoption bears directly on the claimed rational basis of the MMA. Plaintiffs are injured because DeBoer and Rowse cannot marry and because they cannot become legal parents to their children. First, the validity of the second-parent adoption statute remains a triable issue in this case because the Court did not grant the State Defendants' motion for summary judgment on the second-parent adoption claim. R 89, Opinion and Order Denying Cross Motions for Summary Judgment, p 6. Second, even if this Court focusses its inquiry on the validity of the MMA, the injury Plaintiffs suffer because DeBoer and Rowse cannot adopt each others' children is relevant. In evaluating any claimed rational basis for the MMA, the Court should take into account the adverse consequences of limiting marriage to opposite-sex couples. One of the key adverse consequences is how the MMA interacts with the

Michigan Adoption Code. Section 24 of the Michigan Adoption Code ("section 24")
limits adoption to single individuals and married couples. *See* Mich. Comp. Laws §§
710.24. Therefore, the MMA, as implemented through section 24, prevents same-
sex couples from jointly adopting a child. R 89, Opinion, p 3, n 5 ("Plaintiffs may
not jointly adopt their children because they are not married."). This injury is directly
relevant to this Court's assessment of the MMA's constitutionality.[1]

Plaintiffs intend to prove that preventing both same-sex parents from having
legal rights to the children they co-parent causes economic and psychological injury.
For example, Professor David Brodzinsky will testify that:

> [i]t is critically important to children to have legally recognized parent-
> child relationships with the people they know to be their parents. A
> legal parent-child relationship affords children access to important
> economic resources, including but not limited to health insurance,
> social security disability and survivor's benefits, and inheritance rights.
> Having legal ties to their parents is also enormously important to
> children's psychological well-being. Preventing same-sex couples from
> establishing legal ties for both partners through second parent or joint
> adoption can harm the child psychologically because of the ambiguous,
> socially unrecognized, and seemingly non-permanent relationship with
> the second parent. Such an arrangement can deprive the child of the
> emotional security, societal affirmation, sense of normality, identity,
> and social stability that comes with a full legal relationship with the
> second parent. They can also suffer unnecessary fear, anxiety, and
> insecurity related to possible separation from the second parent in the
> event of their parents' separation or upon the death of the biological or
> adoptive legal parent. And they are, in fact, at risk of losing an
> important attachment relationship if such circumstances occur. It is well

---

[1] Preventing same-sex couples from jointly adopting a child is a cognizable injury
under 42 U.S.C. § 1983.

3

established in the research that children can suffer profoundly from broken attachments to parental figures.

*See* Brodzinsky Expert Report, 10, appended.  This evidence is clearly relevant to the factual issues as framed by this Court.

State Defendants cite footnote 5 of this Court's opinion, arguing that the Court precluded parties from presenting evidence related to issues about section 24.  Brief, p 6.  This Court's footnote 5 does nothing of the sort. This Court merely clarifies that it "expresses no view on the constitutionality of section 24" and recognizes that the terms of section 24 are deeply intertwined with the MMA's limitation of marriage to opposite-sex couples.  R 89, Opinion, p 3 , n 5. In fact, it was the Court that *sua sponte* recognized the connection between section 24 and the MMA during oral argument on the State Defendants' Motion to Dismiss.  See Transcript 8/29/12, p 11.  Thus, State Defendants misread the plain text of the Court's order. Given the relevance of second-parent adoption to the factual issues of this case, the Court should deny the State Defendants' motion to exclude references to second-parent adoption.

## B. Professor Nancy Cott is a highly qualified expert whose testimony is relevant to the issues of this case.

This Court should deny State Defendants' motion in its entirety with respect to Plaintiffs' expert witness Professor Nancy Cott.  Professor Cott's testimony is relevant for assessing each of State Defendants' asserted justifications for the MMA.

First, Professor Cott's testimony concerns the tradition of marriage in our country. State Defendants purport that our country's marriage traditions justify the existence of the MMA. *See* R 89, Opinion, p 6.  Professor Cott's testimony will show that there is no single "traditional" notion of marriage, that, in fact, the tradition of marriage in our country is one of change: a steady progression towards greater access and equality in which our federal courts have traditionally played a vital role. She elaborates on the historical progression of the law, for example, removing racial barriers [*see Loving v. Virginia*, 388 U.S. 1 (1967);  Cott Expert Report, pp 17-18, appended to R 115-1, State Defendants' Brief], and invalidating laws that discriminated against women [*see, e.g.*, *Califano v. Goldfarb*, 430 U.S. 199 (1977); Cott Report, pp 16-17]. These facts are directly relevant in this case where the State tradition is on their side.

Second, Professor Cott's testimony speaks directly to the historical connection, or lack thereof, between procreation and marriage. In particular, Professor Cott reports that the "ability or willingness of married couples to produce progeny has never been necessary for valid marriage in American law." Cott Report at 10. Her testimony will clearly demonstrate that civil marriage has never been limited to procreative couples. *See, e.g.*, *Turner v. Safley*, 482 U.S. 78, 96 (1987) (regulation prohibiting prisoners from marrying unconstitutional even though some inmates may never be able to consummate their marriage and therefore never

5

procreate). Couples who do not wish to have children or to adopt children have never been precluded from marrying. That is, the State Defendants' "gender role-modeling justification" and procreation justifications for the MMA are not just untethered to historical precedent and historically incorrect, they are irrational.

Professor Cott's testimony is also relevant to the State Defendants' asserted justifications for the MMA overall. The State Defendants concede that Professor Cott's testimony concerns the "features and functions of marriage." Brief, p 10. Therefore, her testimony bears directly on the rationality of the State Defendants' justifications for a ban on marriage between same-sex couples. In asking this Court to exclude Professor Cott's testimony, State Defendants ask the Court to blind itself to crucial background and historical facts.

The State Defendants' characterization of Dr. Cott's testimony is not only misguided, it is also contradictory. They first attempt to dismiss her expertise as "narrow," Brief at 9, but they also criticize her testimony for being "broad-based," *id*. at 10. In fact, Professor Cott's extensive studies allow her to synthesize a vast number of facts and details—narrow points—into a coherent, robust understanding of the institution of marriage—a broad perspective that will be of great value to this Court. Moreover, this is precisely the role an expert witness should play in litigation: He or she should supply "specialized knowledge" to "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a).

6

The State Defendants wisely do not question Professor Cott's expertise as an historian. Instead, they imply that history is not a "relevant field" for this case. Brief, pp 8-9. This is incorrect. Historical facts not generally known provide this Court with a deeper understanding of the flawed basis of State Defendants' claimed justifications for the MMA. In particular, historical evidence about the evolution of marriage highlights the irrationality of State Defendants' justifications.

Precedent also favors admission of Professor Cott's testimony. Other federal courts have relied on her expertise. For instance, in *Perry v. Schwarzenegger*, plaintiffs challenged the constitutionality of Proposition 8, a California state constitutional amendment banning marriage between same-sex couples. 704 F. Supp. 2d 921, 927 (N.D. Cal. 2010). The claimed justifications for Proposition 8 were similar to those offered here in support of the MMA. *See id.* at 931. The court in that case not only concluded that Professor Cott was "amply qualified to offer opinion testimony," including at trial, *Id.* at 940, but in its opinion, the court repeatedly gave great credence to Dr. Cott's expert testimony. *See, e.g.*, *id*. at 933-34, 947, 956-57. In cases challenging the constitutionality of section 3 of the Defense of Marriage Act (DOMA), other federal courts have relied upon Professor Cott's declarations or her book, *Public Vows*, when granting summary judgment. *See Golinski v. Office of Personnel Management*, 824 F. Supp. 2d 968, 1000, 1000 n.10 (N.D. Cal. 2012) (citing a Declaration submitted by Cott); *Gill v. Office of Personnel*

*Management*, 699 F. Supp. 2d 374, 392 n.129 (D. Mass. 2010) (citing Dr. Cott's

book *Public Vows*). In sum, Professor Cott's testimony will be relevant to the issues

in this case, and this Court should deny State Defendants' motion in its entirety with

respect to Dr. Cott.

### C. Dr. George Chauncey's testimony is relevant to Phase I of the upcoming trial.

This Court should deny the State Defendants' motion in its entirety with

respect to Plaintiffs' expert witness Dr. George Chauncey.  Plaintiffs contend that,

even at the "rational basis" so-called "lowest" level of scrutiny, they are entitled to

*non-deferential* rational basis scrutiny because the group involved here has endured

an historic pattern of disadvantage.   This Court found as follows in its opinion

denying the cross motions for summary judgment (R 89):

> [T]he rational justification of the MMA must be rooted "in the
> realities of the subject [being] addressed . . ." *Heller v. Doe*, 509 U.S.
> 312, 321 (1993). And when a provision of law adversely affects a
> group that has endured "historic patterns   of disadvantage," courts
> make "a more careful assessment of the justifications than the light
> scrutiny offered by conventional rational basis review."
> *Massachusetts v. United States Dep't of Health and Human Servs*.,
> 682 F.3d 1, 11 (1st Cir. 2012); see also *United States v. Windsor*, 133
> S. Ct. 2675, 2696 (2013) (invalidating the Defense of Marriage Act on
> the ground that "no legitimate purpose overcomes the purpose and
> effect to disparage and to injure those whom the State, by its marriage
> laws, sought to protect in personhood and dignity.").

*Id*. 5.   *See also United States v. Windsor*, 133 S. Ct. 2675, 2693 (2013) ("In

determining whether a law is motivated by an improper animus or purpose,

discriminations of an unusual character especially require careful consideration.")
(internal quotation marks omitted) (citations omitted); *Romer v. Evans*, 517 U.S.
620, 624 (1996); *see also Lawrence v. Texas*, 539 U.S. 558 (2003) (considering the
history of anti-sodomy laws).

The State Defendants' objections to Dr. Chauncey's appearance at Phase I of
the upcoming trial rest on a misinterpretation of Rules 401 and 403.[2] Evidence is
relevant if "it has any tendency to make a fact [of consequence] more or less
probable." Fed. R. Evid. 401. Dr. Chauncey will testify that gays, lesbians, and
same-sex couples have been discriminated against for over a century. *See* Chauncey
Expert Report, p 10, appended to R 115-1, State Defendants' Brief.  This evidence
demonstrates an historic pattern of disadvantage triggering non-deferential rational
basis review, it is probative of a discriminatory animus, and it refutes the State
Defendants' claim that benign, rational reasons motivated proponents of the MMA,
and drove its passage.  Dr. Chauncey's testimony makes it more likely that the State
Defendants' justifications for the MMA are pretextual and irrational. In particular,
the State Defendants' claim that tradition and morality justify the MMA. Dr.
Chauncey's testimony establishes that the "traditions" upon which State Defendants
rely are, in fact, patterns of discrimination against same-sex couples. This speaks

---

[2] State Defendants rightly do not question Dr. Chauncey's expertise as a historian,
nor do they object to his appearance at Phase II of the trial.

directly to the core factual issue of Phase I: whether State Defendants' claimed justifications for the MMA are rational and legitimate. Chauncey's testimony will show that they are neither rational nor legitimate.

In *Romer v. Evans*, the United States Supreme Court considered the constitutionality of Colorado's Amendment 2, which denied legal protections to gays and lesbians. *See* 517 U.S. 620, 624 (1996). In holding the amendment unconstitutional, the Supreme Court concluded that Colorado's Amendment 2 "seem[ed] inexplicable by anything but animus toward the class it affects." *Id.* at 632. It further held that the amendment "raise[d] the inevitable inference that the disadvantage [it] imposed [was] born of animosity toward the class of persons affected." *Id.* at 634. The possibility of animus and animosity was clearly relevant to the Court's analysis. Significantly, the *Romer* Court assessed the constitutionality of Amendment 2 under a rational basis standard—the same standard this Court will use in Phase I of the upcoming trial. *Id.* at 640 n.1 (Scalia, J., dissenting). Thus, Dr. Chauncey's findings as to an historic pattern of disadvantage are relevant and admissible. Moreover, these findings provide context to Plaintiffs' claim that the MMA's proponents likely bore a discriminatory "animus toward the class of persons affected".

A court excludes evidence under Rule 403 only when "its probative value is *substantially* outweighed by a danger of . . . unfair prejudice, confusing the issues,

10

misleading the jury, undue delay, wasting time, or needless presenting cumulative evidence." Fed. R. Evid 403 (emphasis added).  State Defendants have offered no reasons for why Dr. Chauncey's testimony might be prejudicial, apart from a conclusory statement that his testimony would "likely confuse the issues in this case." Brief at 17. On the contrary, Dr. Chauncey's testimony will provide valuable information and context that will "help the trier of fact to understand the evidence and determine . . . fact[s] in issue." Fed. R. Evid. 702.

Moreover, the nexus between Dr. Chauncey's historical evidence and the history of the MMA demonstrates that his testimony is highly probative. Dr. Chauncey reports that "[a]nti-gay measures often were enacted or strengthened in response to periods of relative growth in the visibility or tolerance of gay people." Chauncey Report at p 6. The MMA was approved on November 2, 2004. *See* Mich. Const. art. I, § 25. This was the first Election Day following a widely publicized decision by the Supreme Judicial Court of Massachusetts upholding marital rights of same-sex couples for the first time in United States history. *See Goodridge v. Department of Public Health*, 440 Mass. 309 (2003) (decided Nov. 18, 2003). The proximity between *Goodridge* and the passage of the MMA increases the probative value of Dr. Chauncey's discussion of the animus motivating the MMA. Thus, Dr. Chauncey's evidence is highly probative, not prejudicial, and should not be excluded under Rule 403.

For the reasons set forth above, Plaintiffs request that the Court deny the State Defendants' Motion in *Limine* to exclude references to second parent adoption and exclude witnesses, Dr. Nancy Cott and Dr. George Chauncey.

Respectfully submitted,

s/Carole M. Stanyar                      s/ Dana Nessel
CAROLE M. STANYAR P34830                 DANA M. NESSEL P51346
221 N. Main Street, Suite 300            645 Griswold Street, Suite 4300
Ann Arbor, MI 48103                      Detroit, MI 48226
(313) 819-3953                           (313) 556-2300
cstanyar@wowway.com                      dananessel@hotmail.com

Dated: February 13, 2014                 Attorneys for Plaintiffs

Of counsel:
s/Robert A. Sedler                       s/ Kenneth M. Mogill
ROBERT A. SEDLER  P31003                 KENNETH M. MOGILL P17865
Wayne State University Law School        MOGILL, POSNER & COHEN
 471 W. Palmer Street                    27 E Flint Street, 2nd Floor
Detroit, MI 48202                        Lake Orion, MI 48362
(313) 577-3968                           (248) 814-9470
rsedler@wayne.edu                        kmogill@bignet.net

On the Brief:
s/Steven Kochevar
s/Irina Vaynerman
s/Bryn Williams
Law Student Interns
127 Wall Street
New Haven, CT 06511
(979) 220-5271
bryn.williams@yale.edu

## <u>CERTIFICATE OF SERVICE</u>

CAROLE M. STANYAR hereby certifies that a copy of Plaintiffs' Response to
State Defendants' Motion in Limine to Preclude References to Second Parent
Adoption and to Exclude Witnesses, Exhibit in Support, and this Certificate of
Service were served upon Assistant Attorneys General Kristin Heyse, Tonya Jeter,
and Joseph Potchen, and upon counsel for Ms. Brown, Andrea Johnson and
Michael Pitt, ECF filers, on February 13, 2014.


                                        *s/Carole M. Stanyar*
                                        CAROLE M. STANYAR