UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL DEBOER, *et al.*,

        Plaintiffs,                    #12-cv-10285
                                                  Hon. Bernard A. Friedman

-vs-

RICHARD SNYDER, *et al.*,

        Defendants.

___

## PLAINTIFFS' COMBINED ANSWER AND BRIEF IN RESPONSE TO STATE DEFENDANTS' MOTION *IN LIMINE* TO DISQUALIFY AND EXCLUDE VIVEK S. SANKARAN, J.D.

### Introduction

Plaintiff April DeBoer is the adopted mother of child Plaintiff R, and Plaintiff Jayne Rowse is the adopted mother of child Plaintiffs N and J. All three children are special needs children who were in foster care before being adopted. Before the children were adopted, the State of Michigan certified DeBoer and Rowse as a couple to be licensed foster care parents to the children. The Michigan Adoption Code, coupled with the Michigan Marriage Amendment (MMA), has prevented and continues to prevent the women from marrying and from jointly adopting the children they both have raised since infancy.

The Plaintiffs propose to call Prof. Vivek S. Sankaran as an expert witness at trial. Prof. Sankaran's testimony will establish two basic points:

1

1. That Michigan has a significant number of children who exit the foster care system each year without being given a permanent home. The costs for raising these children in public institutions and homes is steep and outcomes for leaving the foster care system without permanent homes are bleak. Expanding the pool of adoptive parents who could appropriately care for these children would yield significant benefits to children while also reducing costs to the state.

2. That the ban on second parent adoption by same sex couples increases the risk of children being uprooted from stable and loving homes if the parent with legal rights over the child dies. If this happens, the child may find herself placed in foster care with strangers or subject to unnecessary scrutiny from government agencies, lawyers and courts. This scrutiny would arise because custody, guardianship or adoption cases that would need to be filed to create a new legal relationship between the child and the surviving "parent." And, in these proceedings, there would be no guarantee that the child would necessarily end up in the care of the surviving "parent." The potential for legal uncertainty and instability in a child's life would not serve the interests of children.

(Ex. A, Expert Report of Vivek S. Sankaran, J.D., at 2).

The Court should deny the State Defendants' Motion *in Limine* to disqualify and exclude Prof. Sankaran for the reasons set out below. Specifically, (A) Prof. Sankaran is qualified to testify as an expert on the mechanics and effects of the Michigan foster care system, (B) his reliance on aggregate data is valid, (C) his testimony related to foster care and adoption is relevant, (D) his testimony is admissible under Fed. R. Evid. 704, and (E) his testimony is highly probative.

### A. Prof. Sankaran is qualified to testify as an expert on the foster care system.

Prof. Sankaran is qualified to testify as an expert in this trial. The State Defendants disingenuously argue that he is not qualified because he is "not an

2

expert in child rearing by same sex couples." *See* Defs.' Mot. To Disqualify and Exclude Vivek S. Sankaran, J.D., 11-12 [hereinafter Defs.' Mot.]. Prof. Sankaran is not being offered as an expert on child rearing, however, as the State Defendants well know.

An expert witness may testify if his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Plaintiffs are offering Prof. Sankaran as an expert within his area of expertise – the Michigan foster care system – in order to elicit relevant testimony about the negative impact of the MMA on children in that system. His testimony will discuss the foster care system as a whole, including, *inter alia*, the harms of keeping children in the foster care system when stable and loving families are available to adopt those children, the general benefits of expanding the pool of adoptive parents, and the harmful effects of subjecting children to the foster care system if "the parent with legal rights over the child dies." Ex. A, Sankaran Expert Report, 2. Prof. Sankaran's deep knowledge of the foster care system well qualifies him to testify about these critical factual issues.

The State Defendants also erroneously assert that Prof. Sankaran's conclusions are based only on "foster-care statistics, psychological and sociological studies, economics, and Michigan law." To the contrary, Prof.

Sankaran's knowledge was primarily attained through his thirteen years of experience as an attorney working within the child welfare system and his role as a clinical faculty member at the University of Michigan Law School. In 2001, Prof. Sankaran began working at the Children's Law Center in Washington, D.C. *See* Ex. A at 1. In his more than four years at the Children's Law Center, Prof. Sankaran represented hundreds of foster children. *Id.* This experience provided him with intimate first-hand knowledge about the workings of the foster care system and its effects on children. *Id.* In 2005, Prof. Sankaran left his practice at the Children's Law Center to become a clinical law professor at the University of Michigan Law School, where he is the supervising attorney of the Child Advocacy Law Clinic. *Id.* at 1. He continues to represent parents and children in child welfare cases through his clinic and through appointments by the Michigan Supreme Court. *See* Ex. B, Curriculum Vitae of Vivek S. Sankaran at 1, 10.

Prof. Sankaran's experience in foster care cases involving same-sex parents, his many communications with professionals in the field, and his professional training further enhance the reliability of his testimony. *See* Defs.' Mot. at 11-12, n. 1. The State Defendants mischaracterize this experience as "anecdotal evidence." *Id.* However, the Supreme Court has explicitly stated that an expert's testimony may permissibly rest upon "personal knowledge or experience" because "there are many different kinds of experts, and many different kinds of expertise."

4

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999); *see also United States v. White,* 492 F.3d 380, 403 (6th Cir. 2007) (testimony of Medicare auditors admissible as "expert testimony" because "[t]he Medicare program operates within a complex and intricate regulatory scheme"). The National Association of Counsel for Children has certified Prof. Sankaran as a "child welfare law specialist," further evincing the depth of his specialized knowledge. Ex. A at 1. In fact, the State Defendants concede that Prof. Sankaran is "arguably qualified to offer expert opinions on the law with respect to foster care." Defs.' Mot. at 11.

### B. Prof. Sankaran's reliance on aggregate data about foster youth is appropriate under Fed. R. Evid. 703.

To augment his expert testimony, Prof. Sankaran partially relies on studies from the fields of psychology, sociology and economics. The State Defendants incorrectly argue that because he discusses these studies, his testimony is an improper "conduit for hearsay." Defs.' Mot. at 13. However, pursuant to Fed. R. Evid. 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Furthermore, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.* Like the experts in *Chavez v. Carrana*, Prof. Sankaran may base his testimony in research and reports gathered and written by others. 559 F.3d 486, 497 (6th Cir. 2009) (district court did not

5

abuse its discretion in allowing the jury to determine the weight to be given to the testimony of two experts).

Even if this Court were to determine that the studies themselves constituted hearsay, it is within this Court's discretion to admit the facts or data in order evaluate the strength of Prof. Sankaran's expert opinion. Fed. R. Evid. 703 advisory committee's note (a court may admit facts or data that would otherwise constitute hearsay in order to evaluate the strength of an expert's opinion); *see Williams v. Illinois,* 132 S. Ct. 2221, 2235 (2012) ("When the judge sits as the trier of fact, it is presumed that the judge will understand the limited reason for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose."); *Harris v. Rivera,* 454 U.S. 339, 346 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."). Indeed, "the disclosure of basis evidence can help the factfinder understand the expert's thought process and determine what weight to give to the expert's opinion." *Id.* at 2240. Just as the Sixth Circuit concluded in *Chavez*, admitting the underlying research and reports may well assist this Court in determining the weight to give Prof. Sankaran's testimony.

Although Prof. Sankaran is not an expert in psychology, sociology or economics, he will not be offering expert testimony in these fields, and he may

6

properly rely on studies in these fields because they are of a type "reasonably relied upon by experts" who work with the foster care system. *See Daubert*, 509 U.S. at 595; Fed. R. Evid. 703. Prof. Sankaran's testimony documenting (1) the number of children who "'aged out' of foster care when they reached adulthood," (2) the percentage of youth who exited the foster care system who experienced homelessness, received public assistance, used drugs, or had mental health problems, and (3) the State's annual expenses for each foster child, Ex. A at 3, is all relevant to establishing the irrationality of the MMA and its intertwined preclusion of second-parent adoptions by gay and lesbian couples.

Finally as to this point, unlike the expert in *Dura Auto. Sys. Of Indiana, Inc. v. CTS*, Prof. Sankaran does not adapt the data from the studies in any way; therefore, "discretionary expert judgments" by the studies' authors are not required. 285 F.3d 609, 615 (7th Cir. 2012). Since these reports are "cut and dried," their authors need not testify. *Id.* at 614.

### C. Prof. Sankaran's testimony about adoption and foster care is relevant to the factual issues identified by the Court.

The State Defendants argue that Prof. Sankaran's proposed legal opinions and conclusions are irrelevant on the ground that the proposed testimony "does not make any fact of consequence in this case-whether the State's rationale for the Marriage Amendment meets rational-basis review-any more of less probable." (Doc.# 114 at 19.). In doing so, the State Defendants assert that "his testimony and

opinions do not address the marriage issue, but rather the adoption issue, which this court has effectively foreclosed in its opinion and order denying the parties' cross motions for summary judgment." *Id.*

To the contrary, this Court's opinion denying the cross-motions for summary judgment does not foreclose the presentation of proofs related to issues surrounding the second-parent adoption law and the Michigan Adoption Code. (See Plaintiffs' Response to State Defendants Motion in Limine to Exclude References to Second-Parent Adoption and to Exclude Witnesses). However, even if the Court were to limit the proofs to the constitutionality of the MMA, the Court's opinion notes that "a triable issue of fact exists regarding whether the alleged rationales for the MMA serve a legitimate state interest." In resolving this question, it is manifestly relevant for the Court to consider the multiple, serious harms caused by limiting civil marriage to "one man, one woman." (Op. & Order Den. Cross Mot. For Summ. J. Doc.#89 at 4.)

Prof. Sankaran's testimony is relevant to demonstrating the harm caused by the inability of same-sex couples raising children or who wish to raise children to obtain joint or second-party adoptions of these children. This harm affects not only the children of these couples but also children in foster care awaiting adoption. Prof. Sankaran's testimony detailing this harm is especially relevant to the ultimate issue of whether or not the MMA is rational when contrasting its deleterious

8

effects with the alleged rational basis proposed by the State Defendants. The State Defendants cannot fairly assert that the MMA is reasonable in order to protect children and families and then attempt to preclude any testimony which demonstrates that this same law injures children and families.

The original purpose of this lawsuit was to ensure very basic protections to April DeBoer and Jayne Rowse and to their three children as to whom the law prohibits joint legal rights. The Plaintiffs' concern has always been that in the event the legal parent dies or is incapacitated, the child(ren) would be removed from the custody of the non-legal parent, a situation which would be averted if both adults were afforded legal parenting rights. The State Defendants have countered with the inaccurate argument that Plaintiffs and similarly situated families have mechanisms at their disposal which can preclude these tragic circumstances from unfolding.

In the State Defendants' Brief in Support of Motion for Summary judgment [Doc #69-1], they argue:

> If the intent for recognition of second-parent adoptions, as Plaintiffs claim, is to provide emotional or financial support for children, Michigan law already provides such legal structures. Michigan has the following available to Plaintiffs: guardianships, conservatorships, wills, durable medical and financial powers of attorney, durable powers of attorney (permitting Plaintiffs to designate each other as agent for purposes of parental decisions), and testamentary trusts (allowing Plaintiffs to list each other as primary beneficiaries and the child as alternate beneficiaries) that can provide security for the

9

children without undermining the institutions of marriage and family or creating untenable relationships.

(*Id.* at 33).

Prof. Sankaran's testimony will directly contradict this contention. He will explain how the execution of a guardianship or will (or any of the legal documents the State Defendants set forth as protective measures) creates no assurances that a child will remain placed with her or his non-legal parent in the event of death or incapacity to the legal parent. Ex. A at 4-6.

Prof. Sankaran's testimony is also relevant to rebutting the State Defendants' "unintended consequences" justification for the MMA. He will testify that expanding the pool of adoptive parents through marriage between same-sex couples "would yield significant benefits to children [in the foster care system] while also reducing financial costs to the State." Ex. A at 2. His testimony will show that it is irrational for the State to justify a law on the basis of denying such significant benefits, and he will explain that "[t]he ban on second parent adoption by same-sex couples deprives some children of the very thing that they need – a loving and permanent home that will allow them to exit the foster care system." *Id.* at 4. He will also testify about how the MMA and Michigan's adoption statutes permit same-sex couples jointly to serve as temporary foster parents while irrationally preventing those same couples from serving as permanent parents. *Id.*

### D. Prof. Sankaran's testimony is admissible under Fed. R. Evid. 704.

10

Prof. Sankaran's conclusion that "no rational basis exists for the State to impose a ban on second parent adoptions by same sex parents" is also admissible. Ex. A at 4-6. Pursuant to Fed. R. Evid. 704, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. The Sixth Circuit explained that "Rule 704 removes the general 'proscription against opinions on ultimate issues and shift[s] the focus to whether the testimony is otherwise admissible.'" *United States v. Sheffey*, 57 F.3d 1419, 1425 (6th Cir. 1995) (citing *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)). In assessing the admissibility of an expert's opinion on a legal conclusion, this Court may "determine whether terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate." *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985); *see also Sheffey*, 57 F.3d at 1426 (6th Cir. 1995). In this case, as in *United States v. Smith*, "there is no distinction between the legal term of art [rational basis] and the common vernacular usage that would render [Prof. Sankaran's] testimony inadmissible under Rule 704." 70 F. App'x 804, 809 (6th Cir. 2003) (testimony admissible in the absence of distinction between legal term of art and common vernacular usage). Thus, Prof. Sankaran's opinion about the lack of rational basis for the ban on second-parent adoptions is also admissible. When evaluating the weight of Prof. Sankaran's testimony, the Court may decide

11

for itself whether his conclusion is correct.

### E. The probative value of Prof. Sankaran's testimony is not substantially outweighed by a danger of wasting time under Fed. R. Evid 403.

The State Defendants wrongly and disparagingly assert that Prof. Sankaran's testimony would be a "waste of the Court's time." Defs.' Mot. at 14. As detailed above, his testimony will be directly relevant to the issues at bar and highly probative. *See* Fed. R. Evid. 403. It is, therefore, admissible under Rule 403.

For all of the reasons stated above, the State Defendants' Motion in *Limine* to disqualify and exclude Vivek S. Sankaran should be denied.

Respectfully submitted,

s/Carole M. Stanyar
CAROLE M. STANYAR P34830
221 N. Main Street, Suite 300
Ann Arbor, MI 48103
(313) 819-3953
cstanyar@wowway.com

s/ Dana Nessel
DANA M. NESSEL P51346
645 Griswold Street, Suite 4300
Detroit, MI 48226
(313) 556-2300
dananessel@hotmail.com

Dated: February 13, 2014

Attorneys for Plaintiffs

Of counsel:
s/Robert A. Sedler
ROBERT A. SEDLER P31003
Wayne State University Law School
471 W. Palmer Street
Detroit, MI 48202
(313) 577-3968

s/ Kenneth M. Mogill
KENNETH M. MOGILL P17865
MOGILL, POSNER & COHEN
27 E Flint Street, 2nd Floor
Lake Orion, MI 48362
(248) 814-9470

| | |
|---|---|
| rsedler@wayne.edu | kmogill@bignet.net |

On the Brief:
*s/Steven Kochevar*
*s/Irina Vaynerman*
*s/Bryn Williams*
Law Student Interns
127 Wall Street
New Haven, CT 06511
(979) 220-5271
bryn.williams@yale.edu