UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL DEBOER, *et al.*,

       Plaintiffs,

-vs-                   ED Mi #12-civ-10285
                             Hon. Bernard A. Friedman

RICHARD SNYDER, *et al.*,

       Defendants.

_____/

### PLAINTIFFS' MOTION FOR TAXABLE COSTS AND ATTORNEY FEES PURSUANT TO 42 USC §1988 AND RULE 54(D)(1) AND (2)

Now come the Plaintiffs, by and through their undersigned attorneys, and pursuant to 42 USC §1988 and  Federal Rule of Civil Procedure 54(d)(1) and (2), hereby move this Honorable Court for an order granting attorney fees and taxable costs.

1.  On January 23, 2012, Plaintiffs filed this action, pursuant to 42 USC §1983, against Michigan Attorney General Bill Schuette, challenging Michigan's "second-parent adoption" law,  MCL 750.24.

2.  Following the filing of Plaintiffs' initial  Motion for Summary Judgment (R 25), and Defendant's Motion to Dismiss (R 14), this Court permitted Plaintiffs leave to amend their complaint to add a challenge to the Michigan Marriage Amendment (R 33), and the amended complaint was filed on October 3, 2012 (R

38).   Governor Richard Snyder and Oakland County Clerk Bill Bullard were added as parties at that time.  Bullard was later replaced as Oakland County Clerk by Lisa Brown in July of 2013. Mr. Bullard advocated against Plaintiffs while Ms. Brown took a position in favor of the Plaintiffs.   Plaintiffs do not seek fees or costs against the Oakland County Clerk after Brown was substituted as a party for Bullard.

    3.  The Court denied the Defendants' motion to dismiss (R 54) and the parties' cross motions for summary judgment (R 89), and a two-week trial ensued, after which this Court entered findings of fact and conclusion of law (R 141), and judgment (R 152), in favor of Plaintiffs.

    4. Plaintiffs are the prevailing party as defined by 42 U.S.C. §1988 as to their claims pursuant to 42 U.S.C. §1983 against Defendants for violation of Plaintiffs' Fourteenth Amendment rights, and therefore, they are entitled to reimbursement of all taxable costs and attorneys' fees as provided in 42 U.S.C. §1988.

    5. Plaintiffs' attorneys have each attached their respective affidavits and time records as required by Rule 54 of the Federal Rule of Civil Procedure.  (No costs or expenses are claimed).  In addition, attached is the Economics of Law Practice Survey of 2011 of the State Bar of Michigan, indicating that the billing rates for attorneys in Downtown Detroit are as follows: 75th percentile ($375/hour,

and 95th percentile, $525/hour).   As it bears on the "lodestar" calculation",
affidavits are also appended from attorneys from this district who engage regularly
in complex federal civil rights litigation.

6.  For the reasons set forth in the attached memorandum of law and time
records,  Plaintiffs demonstrate here that the foregoing calculations reflect
accurately "the lodestar" -- the "number of hours reasonably expended on the
litigation multiplied by the reasonable hourly rate".  *Hensley v. Eckerhart*, 461
U.S. 424, 434 (1983); *Gonter v. Hunt Valve Company, Inc.*, 510 F.3d 610, 616-
617 (6th Cir. 2007).  The "lodestar" figure for Plaintiffs' counsel is as follows:

For Carole Stanyar:

| Hourly Rate | No. of Hours | Fee |
| --- | --- | --- |
| $350/hour | 2182.5 | $763,875 |

For Dana Nessel:

| Hourly Rate | No. of Hours | Fee |
| --- | --- | --- |
| $350/hour | 1165.10 | $407,785 |

For Kenneth Mogill:

| Hourly Rate | No. of Hours | Fee |
| --- | --- | --- |
| $350/hour | 1011.2 | $353,920 |

For Robert Sedler:

| Hourly Rate | No. of Hours | Fee |
| --- | --- | --- |

|            | $350/hour | 286.6 | $100,310 |

For Mary Bonauto:

| Hourly Rate | No. of Hours | Fee |
| --- | --- | --- |
| $350/hour | 796.7 | $278,845 |

For Vickie Henry:

| Hourly Rate | No. of Hours | Fee |
| --- | --- | --- |
| $350/hour | 32.1 | $ 11,235 |

7. In addition, for the reasons set forth in the attached brief, there is ample basis in this case to exceed the lodestar values set forth above.

8. The Defendants do not consent to the relief sought herein.

WHEREFORE, Plaintiffs request that this Court issue an order granting their motion for attorney fees and costs as follows:

A. That no reimbursement shall be ordered for the taxable expenses incurred in this litigation for the reason that Plaintiffs' counsel have born those expenses themselves through their fundraising efforts.

B. That the Court designate a combined "lodestar" attorney fee calculation in the amount of $1,915,970.

C. This Court consider in its discretion an enhancement to the lodestar calculation and grant Plaintiffs all other relief to which they may be entitled.

Respectfully submitted,

_s/Carole M. Stanyar_
CAROLE M. STANYAR P34830
Attorney for Plaintiffs
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(313) 819-3953
cstanyar@wowway.com

_s/ Dana Nessel_
DANA M. NESSEL P51346
Attorney for Plaintiffs
645 Griswold Street, #4300
Detroit, MI 48226
(313) 556-2300
dananessel@hotmail.com

_s/Robert A. Sedler_
ROBERT A. SEDLER  P31003
Wayne State University Law School
 471 W. Palmer Street
Detroit, MI 48202
(313) 577-3968
rsedler@wayne.edu

_s/ Kenneth M. Mogill_
Kenneth M. Mogill P17865
MOGILL, POSNER & COHEN
27 E Flint Street, 2nd Floor
Lake Orion, MI 48362
(248) 814-9470
kmogill@bignet.net

_s/ Mary Bonauto_
MARY L. BONAUTO
_s/ Vickie Henry_
VICKIE HENRY
Gay & Lesbian Advocates & Defenders
30 Winter Street, Suite 800
 Boston, MA 02108
(617) 426-1350

 Counsel for Petitioners April DeBoer, Jayne Rowse, et al.

Dated: July 27,  2015

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL DEBOER, *et al.*,

        Plaintiffs,

-vs-                     ED Mi #12-civ-10285
                            Hon. Bernard A. Friedman

RICHARD SNYDER, *et al.*,

        Defendants.

_____/

BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION FOR TAXABLE COSTS AND ATTORNEY FEES
PURSUANT TO 42 USC §1988 AND RULE 54(D)(1) AND (2)

While "the general rule in our legal system is that each party must pay its own attorney's fees and expenses . . . Congress enacted 42 U.S.C. §1988 in order to ensure that federal rights are adequately enforced." *Perdue v. Kenny A., et al.*, 559 U.S. 542, 550 (2010)(citations omitted). "Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights." *Id*. 559. Attorney fees are awarded under this provision, through the so-called "private attorney general" doctrine, "not only to make it possible for non-affluent litigants to obtain legal representation, but to reward attorneys whose services has benefitted the public interest." *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1191 (11th Cir. 1983), discussing Note, *Promoting*

1

*the Vindication of Civil Rights Through the Attorney's Fees Awards Act*, 80 Colum.
L. Rev. 370,  377 (1980).

Section 1988(b) provides that a trial court may award attorney's fees as part
of the taxable costs to the prevailing party in a lawsuit brought under §1983.
"Parties are 'prevailing' for §1983 purposes 'if they succeed on any significant
issue in litigation which achieves some of the benefit the parties sought in bringing
the suit.'" *Hensley v Eckerhart,* 461 U.S. 424, 437 (1983). Here, Plaintiffs
prevailed for purposes of §1988 because the judgment was imposed as to all counts
based upon a Fourteenth Amendment claim raised under §1983, and that judgment
has been sustained on appeal. Plaintiffs' counsel have attached the documentation
required by L.R. 54.1.2(b) to support their respective fee requests.

**A. The "lodestar" calculation:**

This Court is to employ the "lodestar" approach to calculate a "reasonable"
attorney fees award, which is "the product of reasonable hours times a reasonable
rate." *Hensley*, 461 U.S. at 434; *Gonter v Hunt Valve Company, Inc.*, 510 F.3d 610,
616-617 (6th Cir. 2007).

> [T]he lodestar looks to "the prevailing market rates in the relevant
> community" . . . "[It] produces an award that *roughly* approximates
> the fee that the prevailing attorney would have received if he or she
> had been representing a paying client who was billed by the hour in a
> comparable case."

2

*Perdue*, 559 U.S. at 551 (citations omitted).   In *Perdue*, the Supreme Court reiterated that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Id.* 551-552.

In determining fees, a district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney.  *Fuhr v. School District of the City of Hazel Park*, 364 F.3d 753, 762 (6th Cir.2004).   The trial court has a unique institutional advantage over reviewing courts in determining an attorney's fee award.  Citing the extensive and lengthy record in *Perdue*, Justice Thomas noted that "[n]either we, nor an appellate panel, can easily read that entire record.  Nor should we attempt to second-guess a district judge who is aware of the many intangible matters that the written page cannot reflect." *Id*. 563-564 (Thomas, J., concurring).   The Sixth Circuit observed in *Roland v. Johnson*, 974 F.2d 1339 (6th Cir. 1992),   ". . .as one who is regularly called upon to review fee matters in the Eastern District of Michigan, [the district judge] was in the best position to evaluate the legal work in light of the market for legal services in the district."

This Court  should consider "the hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Perdue,* 559 U.S. at 563-564 (Thomas, J., concurring), citing *Blum v.*

3

*Stenson,* 465 U.S. 886, 896,  n. 11(1984). The proper scope of comparison for

establishing reasonable hourly rates, for purposes of the lodestar calculation,

extends to "all attorneys in the relevant community engaged in equally complex

federal litigation, *no matter the subject matter*."  *Cotton v. City of Eureka*, 889 F.

Supp. 2d 1154 (N.D. Cal. 2012)  (attorneys awarded hourly rates of $525, $475 and

$300 in §1983 action, emphasis supplied).   Courts have made clear that fees are

"not to be reduced because the rights involved [i.e., liberty, autonomy and equality]

may be non-pecuniary in nature." *Blanchard v. Bergeron*, 489 U.S.  87, 95 (1989).

Consequently, this Court should compare fees awarded in the Eastern District of

Michigan in cases of equal complexity to the *DeBoer* case regardless of whether or

not they are filed as actions under §1983.

   **B. Services properly billable:**

   It is well settled that "a prevailing party may recover fees for time spent

before the formal commencement of the litigation on such matters as attorney-

client interviews, investigation of the facts of the case, research on the viability of

potential legal claims, drafting of the complaint and accompanying documents, and

preparation for dealing with expected preliminary motions and discovery requests."

*Webb v. Board of Education*, 471 U.S. 234, 250 (1985).   Extensive attorney hours

were expended, both before and after the complaint was filed in this case, due to its

4

novel character.  Plaintiffs' and experts' affidavits were generated, alternative legal

theories were considered, dispositive motions and responses were researched and

drafted anticipating challenges by the defendants based on abstention, lack of

standing, injury causation, the absence of a federal question, and claimed

justifications for the laws.

Courts have approved so-called "duplicative" billing, where two attorneys

are billing for the same telephone conversation or meeting.

> The practice of law often, indeed usually, involves significant periods
> of consultation among counsel.  Talking through a set of authorities
> or seeking advice on a vexing problem is often significantly more
> efficient than one attorney's trying to wade through the issue alone.

*Tchemkou v. Mukasey*, 517 F.3d 506, 511-512 (7th Cir. 2008).

Hours spent on preparing the fee motion are compensable as long as they are

not disproportionate to the overall time spent by counsel on the merits of the case.

*Gibson*, 873 FSupp2d at 992; *Coulter v Tennessee*, 805 F2d 146, 151 (6th Cir 1986)

(hours spent on fee motion are reasonable if they constitute 3% or less of the

overall hours expended on the "the main case").

### C. Enhancements to the "lodestar" calculation:

Enhancements to the lodestar may be awarded in "rare" or "exceptional"

cases, including cases in which the attorneys have achieved "exceptional success" .

5

*Hensley*, 461 U.S. at 431; *Barnes v City of Cincinnati*, 401 F3d 729, 745 (6th Cir 2005).   Justice Thomas, concurring in *Perdue*, noted that "[a]s our prior precedents make clear, the lodestar calculation 'does not end the [fee] inquiry' because there 'remain other considerations that may lead the district court to adjust the fee upward.'" *Id*. 561-562, quoting from *Hensley*, 461 U.S. at 434.   An enhancement generally may not be awarded based on a factor that is already subsumed in the lodestar calculation.  *Perdue*, 559 U.S. at 552.   The burden of proving an entitlement to an enhancement falls on the party seeking the enhancement.  *Id*. 553.

   Where the "lawyers' objective in the case [is] unusually important and fully consistent with the central objectives of the basic civil-rights statute, 42 U.S.C. §1983", an enhancement of the lodestar may be warranted.  *Id*. 564 (Thomas, J., concurring).  In *Perdue*, as here, the attorneys seeking the enhanced award had a benevolent motive to help children, in that case, by reforming  Georgia's foster care system. *Id*.

> [L]itigation was necessary to force reform. . .  [Plaintiffs'] attorneys did what the child advocate could not do: They initiated this lawsuit. They thereby assumed the role of "a 'private attorney general'" by filling an enforcement void in the State's own legal system, a function that "Congress considered of the highest priority", . . . and "meant to promote in enacting §1988."

*Id*. 565-567 (Thomas, J., concurring), quoting from *Newman v. Piggie Park*

6

*Enterprises, Inc.*, 390 U.S. 400, 402 (1968), and *Texas State Teachers Assn. v. Garland Independent School District.*, 489 U.S. 782, 793 (1989). Especially here, where it is the State's own attorney general violating basic constitutional rights, someone other than the attorney general must step forward.

The Court in *Perdue* found that several factors, also present in this case, will support an enhancement. First, "superior results" in the lawsuit may support an enhancement insofar as "it can be shown that they are the result of superior attorney performance." *Perdue,* 559 U.S. at 565-567. Second, "an enhancement may be appropriate where the method used in determining the hourly rate . . . does not adequately measure the attorney's true market value, as demonstrated in part during the litigation." *Id.* 554-555. Third, an enhancement may be appropriate if there has been "an extraordinary outlay of expenses and the litigation is exceptionally protracted". *Id.* 555.

In *Caudill v. Sears Transition Pay Plan*, 2011 WL 1595044 (E.D. Mich), an ERISA class action where the Plaintiffs left enhancement to the Court's discretion, the Court applied a 50% enhancement of the lodestar amount "to ensure a reasonable compensation," bringing the total fee award to $758,016 and nearly back in line with the Plaintiffs' original fee request. *Id.* at *18-19. Reasons for the enhancement in *Caudill* apply to the instant case including, *inter alia*, that

7

"Plaintiffs' counsel 'did an excellent job' in this matter, prevailing in what has been lengthy and complex ERISA litigation," "[c]ounsel have submitted declarations detailing their vast experience, reputation and ample ability" and "[t]he novelty and difficulty of the questions involved in this matter also justify an enhancement, as does the time and labor required". *Id. *19*, quoting from *Paschal v. Flagstar Bank, FSB*, 297 F.3d 431, 434 (6th Cir. 2002).

An "exceptional delay" in the payment of attorney fees can be ameliorated by allowing counsel to base the fee award on his or her current hourly rate, or by adjusting the fee based on historical rates to reflect its present value. *Id*. 556. Such a compensatory method is especially appropriate where the delay in adjudication is caused by the defense. *Id*. 556. See also *Gonter*, 510 F.3d at 617; *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir 2005).

**D. Determining the fee award in this case:**

Applying the rules enunciated above,  there is ample basis in this case (a) to credit to number of hours reported by Plaintiffs' counsel, (b) to allow an award of the fees requested based upon the *DeBoer* attorneys' current hourly rate, and (c) to allow an enhancement to the lodestar.

Extensive time and labor was required for this case as set forth in the attached detailed time records as to each attorney requesting fees.  The questions

8

presented were unquestionably novel, complex and difficult.  This was the first trial in history challenging the Michigan Marriage Amendment, and Michigan's statutory marriage and second-parent adoption bans.  It  was only the third trial in U.S. history challenging a marriage preclusion for same-sex couples.  Briefing and motion work was unusually complex with several rounds of summary judgment motions, a motion to dismiss, motions *in limine* filed by the State to exclude Plaintiffs' evidence, and *Daubert*[1] motions filed by both sides as to six different experts.  The preparation of Plaintiffs' findings of fact and conclusions of law immediately upon the conclusion of trial, due several days later, was both laborious and exceedingly stressful.  See *Perdue*, 559 U.S. at 566-567 (Thomas, J., concurring) (enhanced award earned where the case was lengthy and "arduous", and where the "State met the plaintiffs' efforts with a host of complex procedural, as well as substantive, objections," including unfounded abstention doctrine defenses).

The discovery process was both extensive and shoe-horned into a truncated time line.   In the discovery phase, counsel had to investigate, obtain and review massive amounts of documents (including thirty years of research and prior published works) germane to eight different disciplines.  See discussion, *infra*.

---

[1]  *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

The experts' prior testimony in other cases (some dating back nearly 20 years), had to be located, reviewed, digested and worked into direct and cross examination.[2]  The 5000-page official court record in this case does not remotely encompass the document review necessary to this litigation.  Tens of thousands of additional pages were analyzed, and hundreds were offered, but not admitted by the court, at trial.   Moreover, with the case on an exceedingly short time track to trial, counsel was under extreme time pressure to locate experts from around the country, and then to depose them, in Boston, New York, San Francisco and Lansing.   Snow storms in January required several to be rescheduled.   The depositions themselves were lengthy, taking between four and seven hours (on record) per deposition.

The *DeBoer* case took nearly two weeks to try.  Significantly, between five and eight attorneys were present in the courtroom throughout trial *on behalf of the Defendants* (five regularly present for the State Defendants), most questioning witnesses at some point during the trial.  While Plaintiffs were assisted by as many as eight attorneys, seven law clerks, and multiple paralegals during this litigation,

_____

[2]  Santos Sarantakos, a key authority relied upon by the State's expert, Loren Marks, and addressed by this Court in its opinion, published his works only in Australia.  His book was not available for purchase anywhere in this country and had to be obtained, on short notice and with much effort, through the collegiate intra-library system for use during depositions and trial.

Plaintiffs are only seeking compensation from the State for the work of six

attorneys.  The trial issues in the case were unquestionably complex.  Experts in

psychology, sociology, demography, statistics, family studies, history, law and

economics testified in this case.   This case required an extensive, broad-based

record on myriad important topics: the history and demographics of same-couples

and their children; the comparative break up rates of same-sex versus opposite-sex

couples, over history, in the U.S. and worldwide; the history of marriage; the

history of discrimination against gay and lesbian persons; the comparative child

outcome of same-sex versus opposite sex couples on a variety of measures

(including progress through school; propensity for substance abuse, mental illness,

homosexuality, sexual promiscuity, peer and romantic relationship stability; and

identity issues);  the characteristics and outcomes for adoptive children (from

birth, and after placement in foster care); the foster care system in Michigan; the

demographics of children being adopted out of foster care; and the legal

ramifications of guardianships versus adoptions, and wills.

The *DeBoer* trial record is spectacular.  It has influenced the dialogue on

marriage and parenting by same-sex couples across the country, and has been cited

by most courts deciding the marriage question.   The Supreme Court referred to

facts found by this Court early and often, discussing April DeBoer and Jayne

11

Rowse's family in detail.  In fact, the DeBoer case was the only marriage case (i.e.,
"Question One") mentioned specifically by the Court in its opinion.  See*, e.g.*,
*DeBoer v. Snyder ("Obergefell")*, 135 S.Ct. 2584, 2595, 2606 and Appendix A
(June 26, 2015); See also *Bostic v. Schaefer*, 760 F.3d 352, 383 (4th Cir.), *cert
denied,* 135 S. Ct. (2014);  *Kitchen v. Herbert,* 755 F.3d 1193, 1223 (10th Cir.),
*cert denied*, 135 S. Ct. 265 (2014);  *Geiger v. Kitzhaber,* 994 F. Supp. 2d
1128,1144 (D. Or. 2014);  *Latta v. Otter,* 19 F. Supp. 3d 1054, 1081, n. 14 (D.
Idaho 2014); *Baskin v. Bogan*, 983 F. Supp. 3d 1021, 1026 (S.D. Ind. 2014);
*Fisher-Borne v. Smith*, 14 F. Supp. 3d 699, 710 (M.D.N.C. 2014) ; *Love v.
Beshear*, 989 F. Supp.2d 536, 549 (W.D. Ky. 2014); *Majors v. Jeames,* 48 F.
Supp. 3d 1310, 1313 (D. Ariz. 2014);  *Conde-Vidal v. Garcia-Padilla* 54 F. Supp.
3d 157  (D. Puerto Rico 2014).  The *DeBoer* trial record has served an important
cost-saving function by allowing other courts across the country to reject bogus
State rationales without a trial.  By the time of the final decision in these cases, the
Supreme Court could say with confidence that "[a]s all parties agree, many same-
sex couples provide loving and nurturing homes to their children, whether
biological or adopted . . . [g]ays and lesbians can create loving, supportive
families." *DeBoer*, 135 S.Ct. at 2600.

A key factor under *Perdue* for an exceptional fee – the expenses in this case

12

were astronomical.  The challenge of funding of those expenses fell on three private practitioners.  Expert witness fees are not compensable, even after a successful trial, under §1988.  This case involved more expert witnesses than any other in counsels' career.  Fundraising for these case costs was exceedingly difficult and time consuming, with the average fundraiser falling well short of funding the fees of even one expert.  Counsel have worked for more than three years (Nessel and Stanyar for over four) without being paid for time compensable under §1988.  The stress associated with raising funds for this litigation cannot possibly be overstated.[3]

This litigation demanded highly experienced trial and appellate counsel.  At the close of trial, this Court observed that counsel in this case met the highest professional standards, and that this was "the perfect trial in terms of collegiality, in terms of skill, in terms of presentation, in terms of representation of respective clients . . ."  (R. 158, Pg ID 4084).  See *Perdue*, 559 U.S. at 569 (Thomas, J., concurring) (counsel brought a high degree of "skill, commitment, dedication and professionalism" to the litigation).

The appellate issues were also complex.  The legal landscape as to marriage

---

[3] As noted in her affidavit, attached, Attorney Stanyar, a sole practitioner, helped fund this litigation through the proceeds of the sale of her home.

13

equality challenges was changing on a daily basis, with the case being filed

originally prior to the Supreme Court's decision in *Windsor*[4], when marriage was

legal in only a handful of jurisdictions, and ultimately passing through the Sixth

Circuit to the Supreme Court, when thirty-six states enjoyed marriage equality.

The rapid doctrinal development reflected in the opinions from other jurisdictions

required repeated mid-course correction and adjustment in briefing the issues for

appellate courts.

The Sixth Circuit panel hearing the case afforded the *DeBoer* parties (and

no other) a full hour of oral argument -- exceedingly rare --underscoring the

importance of this case.  Oral argument, in the Sixth Circuit and in the Supreme

Court, was punctuated by near-constant probing questioning, with nearly every

jurist weighing in.  Although this Court resolved the Fourteenth Amendment

question on equal protection/rational basis grounds, the appeal was litigated on

multiple constitutional bases: (1) as a due process fundamental right violation

assessed under heightened scrutiny, (2) as an equal protection violation assessed

under rational basis, and (3) as an equal protection violation assessed under

heightened scrutiny based on sexual orientation and gender discrimination.

Questions from the appellate courts during oral argument spanned all doctrines,

---

[4] *United States v. Windsor*, 133 S. Ct. 2675 (2013).

14

and all standards of review.  Consequently, counsels' preparation for oral argument – the most arduous and time-consuming of their careers – proved to be completely essential.

During large portions of this litigation over the last four years, private counsel for Plaintiffs could not take on other work because of the workload necessitated by the *DeBoer* case.  Counsel had to turn away new business, ongoing clients had to be reassigned to substitute counsel, and associates had to be hired to assist with cases that could not be reassigned.  Because the litigation was on such a fast track, there was no capacity to weave in other cases' workload with the demands of the *DeBoer* case.  For all practical purposes, counsels' law practices were shut down for long periods over the last three years.

The relative experience of counsel is being detailed by each respective attorney in the attached affidavits.  It is clearly extensive.  Attorneys Stanyar, Nessel, and Mogill each have participated in hundreds and hundreds of trials in both state and federal courts.  Stanyar, Mogill and Sedler also have extensive appellate experience in the Sixth Circuit and each have argued before the United States Supreme Court.  Professor Sedler has taught constitutional law for over forty years, and he authored the first law review article outlining a possible

15

challenge to the Michigan Marriage Amendment.  Counsel have litigated *Daubert*[5]

motions over decades (in trials and on appeal)  and have presented, and cross

examined,  expert witnesses in a wide range of disciplines.  Counsel have

represented clients for decades in complex federal litigation. As indicated in their

affidavits, attached, Attorney Stanyar has litigated some of this circuit's leading

cases involving the admissibility, necessity and parameters of expert witness

testimony, and Attorney Bonauto has litigated marriage equality cases longer,

more often, with more success than any other lawyer in America.

Affidavits are appended from long-time civil rights practitioners in this

district in support of the instant motion.  In addition, attached is the Economics of

Law Practice Survey of 2011 of the State Bar of Michigan, demonstrating that the

lodestar calculations suggested herein as to each attorney are in line (and lower

than) the billing rates for attorneys in Downtown Detroit in the 75th percentile

($375/hour) and the 95th percentile ($525/hour).   Cases from around the country

are also instructive on this point.  See cases cited *supra*.   In the cases of Professor

Sedler and Attorney Henry, the hourly rates requested here are half what they have

garnered in the past for similar litigation.

This case was both rare and difficult because Plaintiffs' counsel were

---

[5] *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579 (1993).

16

defending members of an historically unpopular minority.  Although public

opinion has shifted considerably in the years that this case has been pending, when

filed, a decided majority of the Michigan population were opposed to marriage by

same-sex couples.  As the affidavit of Professor Chauncey demonstrated (R 169-

1), this state and this country has a history of virulent and persistent prejudice

against gay and lesbian persons.   While this Court was extraordinarily welcoming

to Plaintiffs in its courtroom, Plaintiffs and counsel had to pass through a wall of

anti-gay protesters every morning on the way into court.    Both before and during

the trial, there was an ongoing hostility in the community from those opposed to

gay marriage.   See *Gonter,* 510 F. 3d at 621, n. 7, citing *Johnson v. Georgia*

*Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974)("undesirability" of

the case is a factor to be considered in awarding fees).

By the time this case reached the Supreme Court, the anti-gay sentiment had

hardly abated.   Anti-gay protesters appeared at the courthouse in much greater

numbers, they were louder and much more hostile.  They crowded and taunted the

DeBoer Plaintiffs and their counsel in particular as the team attempted to enter the

courthouse.  One anti-gay protester actually interrupted Supreme Court oral

arguments screaming "Abomination" repeatedly and damning plaintiffs to "burn in

hell" as he was carted away to the Court's downstairs lock up.[6]

Any claim that public opinion has now shifted decidedly toward support of gay and lesbian people in this state is belied by Michigan's most recent election. Attorney General Bill Schuette – the person most associated with defending the ban – was re-elected by a wide margin on November 2, 2014.   Even now, gay and lesbian people are confronted with anti-gay billboards as they travel local thoroughfares to their jobs. *Anti-gay billboards spark controversy*, WDIV, http://hit.ly/F4k5ur (last visited 5/11/15).

Plaintiffs contend that this litigation was "exceptionally protracted", *Perdue*, 559 U.S. at 555, because of the State's conduct in the litigation. First, the trial in this case was necessitated by the fact that the State Defendants asserted falsely at the summary judgment stage that there remained a genuine dispute within the social science community that the children of same-sex parents fare worse than those raised by opposite-sex couples (a claim that this Court found in its opinion to be flatly untrue).  In contrast, every other marriage equality case in the country (most post-dating the *DeBoer* trial record) was resolved by way of summary judgment.  Second, the State Defendants moved successfully to stay the

---

[6] Attorney Stanyar and the adult plaintiffs have also received threatening mail.  Stanyar has also received relentless phone calls from persons protesting on the basis of their religious beliefs.

judgment in the Sixth Circuit, proclaiming (inaccurately) a "likelihood of success" on appeal, which caused further delay in the execution of the judgment and awarding of fees.   This factor bears heavily in favor of awarding counsel fees at their current hourly rate in this case.  *Perdue* , 559 U.S. at 556.

Courts have stressed that a fee under §1983 must be adequate "to encourage competent lawyers to undertake the representation in question", while not offering "a windfall".  *Gonter*, 510 F3d at 616.  As to this factor, it is most significant that prior to the *DeBoer* filing in 2012, no civil rights organization, no law firm, no governmental entity,  and no individual attorney had stepped forward to represent gay and lesbian couples and their children as to these issues in Michigan, even though the MMA had been in effect for 8 years, and the statutory bans had been in effect for 16 years.   The reluctance to do so may well be due to a variety of factors: the fact that expert witness fees (which were astronomical here) are not compensable under §1988; the fact that marriage equality did not even remotely appear to be on the horizon in Michigan in 2012 and the prospect of gaining "prevailing party" status was, therefore, minimal at best; and the fact that a lawsuit like this can bankrupt the average sole practitioner.  See Affidavits of Patricia Streeter and Juan Mateo, appended.   Regardless, the fee imposed by this Court must be adequate to encourage lawyers to marshal worthy cases under §1983

19

despite long odds and widespread opposition so that the most vulnerable members of our society can find a voice in our nation's court system. A fee consistent with, or greater than, the market average is clearly needed here to accomplish the historical intended purpose of §1988.

Certainly, the *DeBoer* case qualifies as an exceptional success. *Tobin v. Gordon*, 614 F. Supp. 3d 514, 519 (D. Del. 2009) (the "degree of success obtained" is the "most critical factor"), quoting from *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)(O'Connor, J., concurring) . Counsel obtained a judgment for these plaintiffs as to a novel cause of action which will improve the lives of hundreds of thousands of same-sex couples and their children now and into the future. In addition, with this Court's patience and guidance, this case served to educate the public that the children of same-sex couples develop no differently than the children of opposite sex couples, and that there is no reason for society to fear gay and lesbian parents.[7] Every case adjudicated after the *DeBoer* decision was disposed of on the basis of summary judgment, Plaintiffs contend, because there is no longer any need for a trial to debate the issues of comparative child outcomes. That significant societal question is now settled as a result of the work

---

[7] For their work in this case, all four of Plaintiffs' Michigan-based attorneys were awarded the prestigious "Champions of Justice" award from the State Bar of Michigan, a non-monetary award.

done in this case.   In appeals elsewhere the country, some State defendants abandoned child outcome rationales for the bans altogether.  See e.g., *Love v. Beshear*, 989 F. Supp. 3d at 548.   In the wake of this Court's findings, in the Tenth Circuit, the State of Utah wrote a letter to that Court (appended) retrenching from its overblown claims based upon Professor Mark Regnerus's testimony. Plaintiffs' attorneys in this litigation have made an enormous contribution to the jurisprudence of marriage equality, a fact they contend bears on a finding of an "exceptional success".  See also *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (25% enhancement from the lodestar value for "exceptional success", a solo practitioner bringing a previously unrecognized cause of action).

Finally, considerable "billing judgment" has already been exercised by Plaintiffs' counsel.  No costs other than attorney fees for the undersigned are being sought from the State even though the costs were extensive, even though other attorneys provided service and actually filed appearances in the district court,[8] and even though many paralegals and law clerks were utilized throughout the lawsuit. Considerable reductions in fees have already been made by counsel in both hourly

---

[8] For example, Attorney Henry is billing for time expended in preparing and attending a deposition in New York for Witness George Chauncey, and for assisting in the preparation of Plaintiffs' proposes findings of fact and conclusions of law.  She is not billing for time spent attending the trial.

rates and in number of hours billed to avoid unjustified duplicate billings.

For all of the foregoing reasons, and based upon the information contained in the attached exhibits, Plaintiffs respectfully request that their motion pursuant to 42 USC §1988 be granted.

Respectfully submitted,

*s/Carole M. Stanyar*
CAROLE M. STANYAR P34830
Attorney for Plaintiffs
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(313) 819-3953
cstanyar@wowway.com

*s/Robert A. Sedler*
ROBERT A. SEDLER  P31003
Wayne State University Law School
 471 W. Palmer Street
Detroit, MI 48202
(313) 577-3968
rsedler@wayne.edu

*s/ Mary Bonauto*
MARY L. BONAUTO
*s/ Vickie Henry*
VICKIE HENRY
Gay & Lesbian Advocates & Defenders
30 Winter Street, Suite 800
 Boston, MA 02108
(617) 426-1350

*s/ Dana Nessel*
DANA M. NESSEL P51346
Attorney for Plaintiffs
645 Griswold Street, #4300
Detroit, MI 48226
(313) 556-2300
dananessel@hotmail.com

*s/ Kenneth M. Mogill*
Kenneth M. Mogill P17865
MOGILL, POSNER & COHEN
27 E. Flint Street, 2nd Floor
Lake Orion, MI 48362
(248) 814-9470
kmogill@bignet.net

Dated: June 27, 2015

22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL DEBOER, *et al.*,

       Plaintiffs,

-vs-                   ED Mi #12-civ-10285
                            Hon. Bernard A. Friedman

RICHARD SNYDER, *et al.*,

       Defendants.
_____/

## CERTIFICATE OF SERVICE

CAROLE M. STANYAR hereby certifies that a copy of Plaintiffs' (Corrected) Motion for Fees Pursuant to 42 U.S.C. §1988, Brief in Support, and this Certificate of Service were served upon Assistant Attorney General Joseph E. Potchen, an ECF filer, on July 27, 2015:

                                     *s/Carole M. Stanyar*
                                     CAROLE M. STANYAR P34830
                                     Attorney for Plaintiffs
                                     221 N. Main Street, Suite 300
                                     Ann Arbor, MI 48104
                                     (313) 819-3953
                                     cstanyar@wowway.com